LORD AND BUSHNELL. COMPANY, Respondent, v. TEXAS & NEW ORLEANS RAILROAD COM-PANY, Appellant.

St. Louis Court of Appeal', January 24, 1911.

1. COMMON CARRIERS: Right of Shipper to Divert Shipment. A shipper has the right to stop or divert a car at an intermediate point on the route.

2. ——: Contract for Shipment: Lex Loci Contractus. Ordinarily, a shipment contract is governed by the laws of the state where it is made.

3. ——: ——: ——: Liability of Initial Carrier. The statute making an initial carrier liable for the negligence of connecting carriers does not apply to a contract of shipment made in another state.

4. ——: Liability of Initial Carrier: Common Law Rule. At common law, a carrier, by merely receiving goods for transportation to a point beyond its line, engages only to carry them safely and within a reasonable time to the end of its line and exercise ordinary care in delivering them to the connecting carrier; but if it enters into a special contract, as it may, to carry to a point beyond its own line, the duty devolves upon it to comply therewith.

5. ——: ——: Usage and Conduct. An initial carrier's obligation to carry freight beyond its line may be shown by usage or conduct.

6. ———: ———: Performance of Initial Carrier's Duty. An initial carrier of freight destined beyond its line, undertaking only to transport to the point most convenient to the destination reached by its line, performs its duty by delivering to the connecting carrier.

7. ———: ———: Contract for Through Shipment: Negligence of Connecting Carrier. Where an initial carrier contracts for a through shipment, the connecting carriers are regarded as its agents, making it liable for their negligence, notwithstanding a provision in the contract exempting it from liability beyond its line.

8. ———: ———: ———: ———: Facts Stated. An initial carrier's contract to transport from a point on its line to a point in another state, via a certain connecting carrier "at" an intermediate point beyond the initial carrier's line, was a contract for through shipment, and the initial carrier was liable for the negligence of the connecting carrier in taking the car over another route, thereby preventing the shipper from exercising his right to divert the shipment at the intermediate point, notwithstanding a provision in the contract exempting the initial carrier from liability for the connecting carrier's negligence.

9. ———: Routing Directions: Duty of Carrier. A carrier must conform to the shipper's routing directions, except as to perishable goods, where conformity would cause injury to the shipment.

10. ———: ———: ———: Action for Breach: Ex Contractu or Ex Delicto. A shipper suing on a contract for through shipment can recover for a connecting carrier's failure to comply with a routing direction, preventing a diversion of the shipment, as a negligent breach of defendant's contract obligation, either in an action *ex contractu* or in an action *ex delicto*.

11. JUSTICES' COURTS: Pleading: Requisites. Formal pleadings are not required in justices' courts, and much latitude is allowed in the statement of a cause of action; it being sufficient if the statement affords reasonable notice to the adversary of the claim relied on and operates to bar another suit on the same cause of action.

12. COMMON CARRIERS: Liability of Initial Carrier: Pleading: Variance. In an action for mis-routing a shipment of goods, the variance between an allegation in the statement filed in a justice's court that defendant, the initial carrier, agreed to carry the freight to a certain point and there deliver it to a connecting carrier and the proof that the delivery was made to the connecting carrier at another point and that the point designated in the statement was an intermediate point on the connecting carrier's line, through which the shipment was routed,

and that the contract was for through shipment, was immaterial, especially in view of the fact that the bill of lading, disclosing the true situation, was filed with the statement, as the basis of the suit.

13. **PLEADING: Immaterial Variance: Failure of Proof.** Under the express terms of Sections 1846 and 1847, Revised Statutes 1909, when a variance is immaterial, the court can find the facts according to the evidence; but if the cause of action is unproved in its entire scope and meaning, or if the evidence actually disproves the substantive allegations relied on, it is not a variance, but a failure of proof.

14. **APPELLATE PRACTICE: Review: Points not Raised Below.** The Court of Appeals, being a court of review, will decline to consider questions presented in the briefs that were not raised in the trial court.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

AFFIRMED.

*Lee W. Hagerman* and *Chas. S. Burg* for appellant.

The court erred in refusing to direct a verdict for defendant. (a) The contract covering this shipment was made in Texas. The statutes of that state were not offered in evidence, and, as there is no presumption that the statutes of one state exist in another state, the rule of the common law must control in the interpretation of this bill of lading and the defendant's liability thereunder. Morrisey v. Ferry Co., 57 Mo. 521; Eckles v. Railroad, 112 Mo. App. 240; McLendon v. Railroad, 95 S. W. 943; Nenno v. Railroad, 105 Mo. App. 540. (b) Under the decisions of this state, as well as under the great weight of authority in this country, at common law a carrier who receives goods for transportation to a point beyond its own line, engages only to carry them safely to the end of its own line and deliver them to the next connecting carrier, and is not liable beyond its own line in the absence of a special contract for through carriage. Minter Bros. v. Railroad, 56 Mo. App. 282; Nenno v. Railroad, 105 Mo. App. 540; Eckles

v. Railroad, 112 Mo. App. 240; McLendon v. Railroad, 95 S. W. 943; Crouch v. Railroad, 42 Mo. App. 249; Hubbard v. Railroad, 112 Mo. App. 459; Myrick v. Railroad, 107 U. S. 102; Bishawaiti v. Railroad, 92 N. Y. S. 783; Burroughs v. Railroad, 100 Mass. 26; Mulligan v. Railroad, 36 Iowa 186, 14 Am. Rep. 514; Railroad v. Waters, 70 N. W. 225; Hunter v. Railroad, 76 Texas 195, 13 S. W. 190; Hutchinson on Carriers (3 Ed.), sec. 226.

*J. M. Lashly* and *Glendy B. Arnold* for respondent.

(1)   The shippers and owners have a right to control the destination of their goods, and where a railroad company receives directions to forward by a particular line or via a particular point beyond the terminus of its own road, and the directions are not obeyed, the railroad company will be liable.   Hutchinson on Carriers (2 Ed.), secs. 337-337a; Moore on Carriers, p. 245; 5 Am. and Eng. Ency. Law (2 Ed.), 214; Davis v. Railroad, 125 Mo. 69; Railroad v. Bank, 178 Ill. 506, 524; Shewalter v. Railroad, 84 Mo. App. 589; Scotthorn v. Railroad, 8 Ex. 341 (Eng.); Railroad v. Day, 20 Ill. 375; Weaver v. Railroad, 135 Mo. App. 210.   (2)   It may be said to be the general rule that where a railroad company accepts goods to be transported by a designated route or by an indicated connecting line or via an indicated point, that the initial carrier is liable for any damages resulting if it delivers the shipment to a carrier other than the designated one or deviates from the route named in the contract.   Eckles v. Railroad, 72 Mo. App. 296; Railroad v. Cole, 68 Ga. 623; Cohen v. Railroad, 126 Mo. App. 244; Ingalls v. Brooks, 1st Edm. Del. Cas. (N. Y.) 104; Wilcox v. Parmalee, 5 N. Y. Sup. 610; Johnson v. Railroad, 39 How. Pac. 127; Hinckley v. Railroad, 56 N. Y. 429.

NORTONI, J.—This is a suit for damages accrued to plaintiff through the breach of a contract of carriage.

Plaintiff recovered and defendant prosecutes the appeal.

Plaintiff is an incorporated company engaged in the lumber business in the city of Chicago, Illinois, and defendant is an incorporated railroad company engaged in the business of a common carrier of goods between the towns of Hyatt, and Dallas, Texas. It appears plaintiff's consignor consigned a carload of lumber to it over defendant's railroad at Hyatt, Texas, for delivery to plaintiff at Chicago, Illinois, with routing directions via Chicago, Rock Island & Pacific Railway Company at Kansas City, Missouri. Of course, plaintiff had the right to stop or divert the car at an intermediate point on the route, and it attempted to do so at Kansas City for the purpose of furnishing the lumber therein to its customer, Swift & Company, at that place. But instead of sending the car through Kansas City, according to the directions on the bill of lading, defendant's connecting carrier, the Chicago, Rock Island & Pacific Railway Company, transported it through St. Joseph, Missouri, and made delivery to plaintiff at Chicago. Because of this, an expense of $98.04 was entailed on plaintiff in transporting the car back from Chicago to Kansas City. By this suit, plaintiff seeks to recover this amount, and declares upon the contract of carriage for the recovery. The breach of such contract alleged is that defendant failed to observe its provision or shipping direction thereon to transport the lumber through Kansas City where it might be intercepted.

Defendant company owns and operates a line of railroads in the State of Texas, the city of Dallas in that state being its northern terminus, at which point it connects with the Chicago, Rock Island & Pacific Railway Company. It appears the Chicago, Rock Island & Pacific Railway Company proceeds from Dallas, Texas, to Topeka, Kansas, and thence maintains two lines, one through Kansas City, Missouri, and another through

St. Joseph, Missouri, which presently converge east of both places and run into Chicago, Illinois. The shipment of lumber involved here should have been transported through Kansas City by the Chicago, Rock Island & Pacific Railway Company, defendant's connecting carrier, but, as said, it was forwarded through St. Joseph instead. The contract of affreightment was entered into in the State of Texas by plaintiff's consignor and agent for its benefit, and ordinarily should be controlled by the Texas law, but the statutes of that state are not in evidence, and it is obvious that our statute declaring the liability of the initial carrier for the negligent acts of connecting lines is without influence. It is therefore conceded that the rights of the parties are to be declared as at common law, that is to say, the contract of affreightment sued upon is to be interpreted and the matter in judgment determined in accord with the principles of the common law which attend the public carriers of goods. There can be no doubt of the proposition that a common carrier performs the full measure of its obligation under the common law by accepting and carrying goods to the end of its line. It is therefore true that under the American rule, by merely receiving goods for transportation to a point beyond its line, the carrier engages only to carry them safely and within a reasonable time to the end of the line and exercise ordinary care in delivering the consignment to the next connecting carrier for further transportation. But it is nevertheless competent for such a carrier to enter into a special contract to carry goods to a point even beyond its own line, and if it does so, the duty to comply is thus of course devolved upon it (the initial carrier). It may be, too, a usage of its business or certain language or conduct shows the railroad undertook to carry the goods and deliver the same beyond the terminus of its line, in which event the obligation may be enforced as well. [Crouch v. L. & N. R. Co., 42 Mo. App. 248; Hutchinson on Carriers (3 Ed.), sec. 231.] No usage or

other conduct suggested appears in this case and it is argued that the contract of affreightment sued upon is insufficient to show the initial carrier undertook to transport the lumber beyond Dallas, Texas, the terminus of its own line.

It is conceded the negligence involved here which entailed plaintiff's loss was that of the connecting carrier, the Chicago, Rock Island & Pacific Railway Company, in omitting to observe the stipulation in the bill of lading to transport the lumber through Kansas City, and that defendant initial carrier properly delivered the same in due time at Dallas, Texas, to such connecting carrier. In view of these facts, it is urged that there can be no recovery against this defendant, the initial carrier, for the negligent inattention to duty by the Chicago, Rock Island & Pacific Railway Company, because this defendant incorporated in the bill of lading a provision to the effect that its liability should cease upon delivery to its next connecting line and such is parcel of the agreement. It is undoubted that where the place of destination is not upon the carrier's road and it receives goods and undertakes only to transport them by its own route to the point most convenient to the destination reached by it and there to deliver to or forward over another road, the carrier performs the full measure of its duty by making the delivery to the connecting carrier as was done in this case. [Hutchinson on Carriers (3 Ed.), sec. 243; Coates v. United States Express Co., 45 Mo. 238.] It is no doubt true as well that it may properly stipulate against liability in some cases after the goods pass into the possession of another or connecting carrier. But while the carrier may by express contract stipulate against liability for goods while in the hands of connecting carriers, he may not relieve himself from the obligation to answer for the negligence of such connecting carrier, even at common law, if his undertaking in the first instance was one for a through shipment. In such circumstances,

where the initial carrier has contracted for a through shipment, the connecting carriers are regarded as its agents in performing the task and such initial carrier must respond for their negligence, notwithstanding a stipulation in the contract of affreightment exempting it from liability beyond the terminus of its own line. [Hutchinson on Carriers (3 Ed.), 240; Lawson on Contracts, sec. 235; The G. H. & H. R. Co. v. Allison, 59 Tex. 193; Condict v. Grand Trunk R. Co., 54 N. Y. 500; Cincinnati, etc., R. Co. v. Pontius, 19 O. St. 221.] Though the bill of lading involved here so exempted defendant for the negligent conduct of its connecting carrier, the Chicago, Rock Island & Pacific Railway Company, it appears on its face to be a through contract of affreightment from Hyatt, Texas, to Chicago, Illinois, "for delivery to Lord & Bushnell or their assigns at Chicago, Illinois." Besides this, the shipping direction thereon says the shipment is "From Hyatt, Texas, to Chicago, Illinois, via Chicago, Rock Island & Pacific *at Kansas City.*" Under the accepted rule of decisions in this state, the express words above quoted render this one a through bill of lading. [See Western Sash & Door Co. v. C. R. I. & P. Co., 177 Mo. 641, 76 S. W. 998.] Such being true, it was breached through the negligence of the Chicago, Rock Island & Pacific Ry. Co., by failing to observe the direction to transport the car through Kansas City and thus occasioned plaintiff's loss as a consequence which entailed liability on defendant initial carrier to respond therefor in damages to it. No one can doubt the proposition that it is the duty of the carrier and its agents to faithfully conform to shipping directions as to routing, unless it be in the case of perishable goods when situate in the stress of circumstances where such directions may not be complied with and preserve the property intact. [Weaver v. So. R. Co., 135 Mo. App. 210, 115 S. W. 500.]

If it be suggested that the negligence of defendant's connecting carrier is not available in this action, on the contract, the answer is that the form of the action concerns the remedy only and in no respect affects the right or obligation of the parties. No doubt the form of the action in contract may invoke other and distinct rules for the admeasurement of damages as was said in Trout v. Watkins Livery Co., 148 Mo. App. 621, 130 S. W. 136, but no point is made on that score here and the question will not be noticed. The right of the plaintiff to invoke the inattention to the shipping instruction as a negligent breach of defendant's contractual obligation in the circumstances of the case is not to be doubted in either form of action. [Hutchinson on Carriers (3 Ed.), sec. 204.]

But it is argued plaintiff's petition declares upon one contract and the recovery was had on another. It may be said of this that the suit originated before a justice of the peace, where formal pleadings are not required and much latitude is indulged in the statement of a cause of action. In such cases, it is sufficient if the statement affords reasonable notice to the adverse party of the claim he is called upon to meet and will operate to bar another suit on the same cause of action. It is true the statement alleges that defendant by its written contract undertook to transport the lumber to Kansas City and there deliver it to the Chicago, Rock Island & Pacific Railway Company and the proof shows the contract was for a through transportation to Chicago, via the Chicago, Rock Island & Pacific Railway Company *at Kansas City*. It is shown also in proof that defendant's line terminates at Dallas, Texas, and that the car of lumber was given into possession of its connecting carrier at that point, but nothing appears to this effect in the bill of lading and it does substantially entail an obligation upon defendant to see that the lumber was in the possession of the Chicago, Rock Island & Pacific Railway Company at Kansas City. This

obligation was not complied with and though it appears there is a variance in the proof made from the allegation in the petition, it is an immaterial one in the sense of the statute, for it could not have misled defendant to its prejudice, especially in view of the fact that the bill of lading itself was filed with the statement as the basis of the suit under the justice of the peace practice. When a variance is immaterial, as in this case, the court is expressly authorized to find the facts according to the evidence. [See secs. 1846, 1847, R. S. 1909.] It is true if the cause of action were unproved not in some particular only but in its entire scope and meaning, it should not be deemed a case of variance but a failure of proof and so, too, if the evidence introduced actually disproved the substantive allegation relied upon. [See sec. 2021, R. S. 1909.] But here the substance of the cause of action was the negligent breach of the contractual undertaking which required the car of lumber to be at Kansas City in charge of the connecting carrier. The contract stipulated that it should be so and the mere fact that it revealed in the case further a through contract to Chicago is immaterial when the substantial rights of the parties are considered. We say this especially in view of the fact that the case originated before a justice of the peace where no formal pleadings are required and in view of the statute authorizing the instrument sued upon before the justice to be filed as the basis of the suit, which was done in this case, though it was annexed to a loosely drawn paper, as is usual in such cases, purporting to be a statement of the cause of action as well.

The other questions in the brief were not presented to the trial court and we therefore decline to consider them for the reason this court is one of review only. The judgment should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Caulfield, J.,* concur.