BALTIMORE, CHESAPEAKE AND ATLANTIC RWY.
CO. *vs.* WILLIAM SPERBER & COMPANY.

*Common carriers: liability to shipper for damages occasioned by
a connecting carrier; pleading; measure of damages.
Carmack amendment to the Hepburn Act. Evi-
dence: letters. Pleading: demurrers;
overruling—; appeals.*

To sustain a demurrer to a plea is not reversible error, where
the defence set up by the plea could be offered under the
general issue plea or other plea filed.                     p. 601

The Carmack amendment to the Hepburn act (Act of June
29, 1906, 34 Statutes at Large, 584, Chapter 3591; U. S.
Comp. Stat. Supp. 1909, page 1149), gives to shippers the
right to sue the common carrier to whom property is deliv-
ered for damages for any injury to the property occasioned
while on its lines or on the lines of connecting carriers to the
place of shipment and delivery. To a suit of this character,
a plea that the goods shipped as alleged in the declaration
were transported over the line of the defendants at the earliest
time consistent with their printed and published schedules is
no sufficient answer, and is demurrable.                    p. 604

The Carmack amendment is a cumulative, and not an exclu-
sive, remedy.                                               p. 602

While the Carmack amendment leaves to shippers the rights
they had under existing law, the joining of a connecting
carrier in a suit against the initial carrier does not, of itself,
operate as a waiver of the rights under the act.            p. 603

Such a suit was brought against the common carrier to whom
the goods were delivered and a connecting carrier; the decla-
ration alleged that the two companies, "as such common car-
riers, are subject to the provisions of the Act of Congress of
the U. S. to regulate commerce, approved Feb. 4, 1887, and the
acts amendatory thereof or supplementary thereto;" * * *

*Held,* that the plaintiffs did not thereby waive their rights under the Carmack amendment to the Hepburn act.    p. 603

In prosecuting both companies in such a case, it is necessary under the act that negligence on the part of the connecting carrier should be shown before the recovery could be had against it.                                        p. 603

The plaintiff must prove the claim had been made upon the carrier at the place of delivery or of origin.        p. 604

In such an action a letter written to the plaintiff by an agent of a connecting carrier and referring to the date on which the shipper first made his claim, is admissible in evidence to show that the claim had been made in time.        p. 605

In an action for damages by a shipper against the common carrier for loss sustained by means or on account of an unreasonable delay in the delivery of the goods, the proper measure of damages is, in general, the market value of the goods had they arrived without delay, less the amount of the value of the goods when they did arrive and were sold, and the amount of freight and charges.              p. 605

Where the carrier did not deliver the goods, but upon their arrival sold them and retained the money the plaintiff is not required to give credit for what the goods brought and which he had not received.                              p. 606

In such a case the plaintiff is entitled to recover the market value of the goods on the day they would have arrived if they had been forwarded and transported with reasonable care and diligence, less the charges and freight.              p. 606

*Decided February 29th, 1912.*

Appeal from the Circuit Court of Wicomico County (PAT-TISON, C. J., TOADVIN and JONES, JJ.).

The following are the prayers offered by the plaintiff and and defendant, respectively, and the action of the trial Court on each prayer:

*Plaintiff's 1st Prayer.*—If the jury shall believe from the evidence that the Eastern Shore Produce Company delivered to the Baltimore, Chesapeake and Atlantic Railway Com-

pany, at Mardela Springs, Wicomico county, Maryland, on the 17th day of May, 1910, a carload of strawberries containing 269 crates, consigned to the plaintiffs at Pittsburg, Pa., and belonging to them, packed in refrigerator car, and that the said Baltimore, Chesapeake and Atlantic Railway Company received the said berries and issued the bill of lading therefor offered in evidence to be transported over its line and connecting railroad line and to be delivered to the plaintiffs at Pittsburg, Pa., then it became the duty of the said Baltimore, Chesapeake and Atlantic Railway Company to use all reasonable care, diligence and exertion in forwarding and transporting the said berries to the said plaintiffs, and if the jury shall believe that the said Baltimore, Chesapeake and Atlantic Railway Company did not use such care, diligence and exertion in forwarding and transporting the said berries and shall further find that by reason of the failure of the said Baltimore, Chesapeake and Atlantic Railway Company to use such care, diligence and exertion, the said berries arrived at their destination in Pittsburgh too late for the market of the day for which they were received and transported by the said Baltimore, Chesapeake and Atlantic Railway Company, that is to say, too late for the market of the day on which they would have arrived if they had been forwarded and transported with such care, diligence and exertion, and that after the said berries did arrive at Pittsburg and the plaintiffs were so notified, that the plaintiffs then inspected the said berries and found them in a damaged condition and unfit for their trade, and did not receive the said berries from the terminal carrier, and that the said terminal carrier took the said berries, then the plaintiffs are entitled to recover the value of the said berries on the day of the market on which they would have arrived if they had been forwarded and transported by the Baltimore, Chesapeake and Atlantic Railway Company with reasonable care, diligence and exertion, and in arriving at the verdict less the charges for transportation and refrigeration of said berries, they may consider the time when they were

ready for delivery to the plaintiffs at Pittsburg, and the plaintiffs so notified. (*Rejected.*)

*Plaintiff's 2nd Prayer.*—If the jury shall believe from the evidence that the Eastern Shore Produce Company delivered to the Baltimore, Chesapeake and Atlantic Railway Company, at Mardela Springs, Wicomico county, Maryland, on the 17th day of May, 1910, a carload of strawberries containing 269 crates, consigned to the plaintiffs at Pittsburg, Pa., and belonging to them, packed in refrigerator car, and that the said Baltimore, Chesapeake and Atlantic Railway Company received the said berries and issued the bill of lading therefor offered in evidence, to be transported over its line and connecting railroad line and to be delivered to the plaintiffs at Pittsburg, Pa., then it became the duty of the said Baltimore, Chesapeake and Atlantic Railway Company and all connecting railroad line, to use all reasonable care, diligence and exertion in forwarding and transporting and delivering the said berries to the said plaintiffs, and if the jury shall believe that the said Baltimore, Chesapeake and Atlantic Railway Company and the connecting railroad lines did not use such care, diligence and exertion in forwarding and transporting and delivering the said berries and shall further find that by reason of the failure of the said Baltimore, Chesapeake and Atlantic Railway Company and the connecting railroad lines, or any of them, to use such care, diligence and exertion, the said berries arrived at their destination in Pittsburg too late for the market of the day for which they were received and transported by the said Baltimore, Chesapeake and Atlantic Railway Company and the connecting railroad lines, that is to say, too late for the market of the day on which they would have arrived, if they had been forwarded and transported with such care, diligence and exertion, and that after the said berries did arrive at Pittsburg and the plaintiffs were so notified, that the plaintiffs then inspected the said berries and found them in a damaged condition and unfit for their trade, and did not receive the said berries from the terminal carrier, and that

the said terminal carrier took the said berries, then the plaintiffs are entitled to recover the value of the said berries on the day of the market on which they would have arrived if they had been forwarded and transported by the Baltimore, Chesapeake and Atlantic Railway Company and the said connecting lines with reasonable care, diligence and exertion, less the charges for transportation and refrigeration of said berries, and in arriving at their verdict they may consider the time when they were ready for delivery to the plaintiffs at Pittsburg and the plaintiffs so notified. (*Granted.*)

*Plaintiff's 3rd Prayer.*—If the jury shall find for the plaintiffs then they may in their discretion allow interest upon such sum as they may find for the plaintiffs. (*Granted.*)

---

*Defendant's 1st Prayer.*—The defendant in this case prays the Court to instruct the jury that under the pleading and evidence in this case that there is no evidence legally sufficient to entitle the plaintiff to recover, and their verdict must be for the defendant. (*Rejected.*)

*Defendant's 2nd Prayer.*—The defendant prays the Court to instruct the jury that if their verdict shall be for the plaintiff that the proper measure of damages is the true market value of the berries, had they arrived without delay, less the amount of the value of said berries when they did arrive and were sold and the amount of freight and charges. (*Rejected.*)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, PATTISON, THOMAS, URNER and STOCKBRIDGE, JJ.

*Robert P. Graham,* for the appellants.

*James E. Ellegood* (with a brief by *Ellegood, Freeny* and *Wailes*), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

The appellees sued the appellant and the Pennsylvania Railroad Company for damages sustained by them by reason of the alleged failure of the two companies to promptly and with diligence transport a carload of strawberries, which were shipped by the Eastern Shore Produce Company from Mardela Springs, Wicomico county, Md., to the plaintiffs at Pittsburg, Pa. The Pennsylvania Railroad Company moved to quash the return of service of process on it, and the Court granted a motion made by the plaintiffs to sever and renew for that company. The case then proceeded against the appellant, resulting in a verdict against it, and this appeal is from a judgment rendered on that verdict. The appellant was the initial carrier and issued the bill of lading under which the berries were carried. The *narr.* alleges that they were received by the appellant for transportation for hire to the City of Pittsburg over its line and the connecting line or railroads of the Pennsylvania Railroad Company, and that the latter company received them to be transported for reward with reasonable dispatch. It is further alleged that the defendants did not promptly and with diligence forward them, but detained them at the point of shipment, at the point of destination and upon their respective roads, by reason of which detention the berries were damaged and failed to reach their destination until too late for the market of the day for which they were shipped and received, and for which they would have arrived in due time if the defendants had used due and reasonable diligence in the transportation and delivery of them to the plaintiff. The *narr.* further alleges that because of the delay and detention of the berries, they were greatly damaged and a large shrinkage in their value took place by reason of the deterioration of their condition, and they were rendered valueless.

The appellant filed three pleas: First, that it did not commit the wrong alleged; second, that it was not guilty of the wrong alleged, and, third: "That the goods shipped as alleged

B., C. AND A. R. R. CO. vs. SPERBER.     601

Md.]                    Opinion of the Court.

in the declaration of the plaintiff were transported over the line of the defendants at the earliest time consistent with their printed and published schedules." The plaintiffs joined issue on the first and second pleas and demurred to the third—the demurrer having been sustained by the Court.

If what is stated in the third plea could excuse the appellant we see no reason why it could not have been offered under the general issue plea, and hence no injury was done by the ruling on the demurrer, but we do not deem it a sufficient answer to the declaration. Without giving other reasons, if what is known as the Carmack amendment to the Hepburn Act of June 29, 1906 (34 Stat. at L. 584, Ch. 3591, U. S. Comp. Stat. Supp. 1909, p. 1149), is applicable to this suit, then it could not be said that the plea was sufficient as the *narr.* alleges delay on other lines and in delivery, as well as on the lines of this company. So we will determine whether it is applicable. That amendment is as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which said property may be delivered. or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

That the common carrier, railroad or transportation company issuing such receipt of bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage or

injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment or transcript thereof."

In *Atlantic Coast Line R. R. Co.* v. *Riverside Mills,* 219 U. S. 186, the Supreme Court definitely settled the question as to the constitutionality of that statute which had been frequently attacked in other Courts, although very generally sustained. When goods were shipped at a great distance over connecting lines, the rule which required a shipper sustaining loss to prove on which line it occurred oftentimes resulted in great hardship, and sometimes in a failure to recover, simply because the shipper could not produce evidence to show where the loss occurred. It may in some instances be burdensome to the initial carrier to be held responsible for loss, damage or injury to the property caused by some other carrier, to whom it is delivered, or over whose line it passes, but it cannot be denied that the initial carrier can generally protect itself far better than a shipper can, and it might easily have happened under the former rule that a shipper would be prevented from collecting a just claim by reason of the great expense incurred, and inconvenience sustained, in an effort to establish it in a distant Court. On the other hand if the holder of the bill of lading was now required to sue the initial carrier alone, and was not permitted to sue the terminal or some other carrier great injustice might be done in that way, and hence probably for that, as well as other reasons the proviso was added—"that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he had under existing law."

The Carmack amendment was therefore evidently intended to be cumulative, and not to furnish an exclusive remedy. We do not understand that to be denied by the learned counsel for the appellant, but he ingeniously argues in effect that inasmuch as the plaintiffs had the right to sue or not to sue, under this Act of Congress, and as they joined

B., C. AND A. R. R. CO. vs. SPERBER.     603

Md.]                     Opinion of the Court.

the Pennsylvania Railroad Company with the initial car-
rier, they "waived all rights to proceed under and by virtue
of the act which provides a remedy against the initial car-
rier alone." The *narr.* alleges that the two companies, "as
such common carriers, are subject to the provisions of the
Act of Congress of the United States to regulate commerce,
approved February 4th, 1887, and acts amendatory thereof
or supplementary thereto;" showing clearly that the plain-
tiffs had no intention of waiving their rights under that
act—and, as we have seen, there was a severance and the
case proceeded against the appellant alone.

If it had been prosecuted against the two companies, then
undoubtedly there could have been no recovery against the
Pennsylvania Railroad Company, unless it had been shown
that it was negligent, but the *narr.* states that the appellant
was the initial carrier and, although it alleges that the loss
was by reason of the delay and detention of the defendants,
and each of them, it was only necessary to prove under the
Carmack amendment that the appellant was the initial car-
rier and that the loss was occasioned by its default or that
of some connecting carrier.   The appellant could not have
been injured by thus uniting the Pennsylvania Railroad
Company, and the second prayer of the plaintiffs, which
was granted, submitted to the jury the question whether the
appellant or any connecting line caused the loss by failure
to use proper diligence in delivering the berries.   The bill
of lading provides that "In issuing this bill of lading this
company agrees to transport only over its own line, and
except as otherwise provided by law acts only as agent with
respect to the portion of the route beyond its own line.   No
carrier shall be liable for loss, damage or injury not occur-
ring on its own road or its portion of the through route,
nor after said property has been delivered to the next car-
rier except as such liability is or may be imposed by law,
*but nothing contained in this bill of lading shall be deemed
to exempt the initial carrier from any such liability so
imposed.*"

In the *Atlantic Coast Line Railroad Company* v. *River-side Mills, supra,* the Supreme Court, through Mr. Justice Lurton, said: "Reduced to the final results. Congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one State, to be transported to a point in another, involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur carrier liability throughout the entire route, with the right to reimbursement for a loss not due to his own negligence." So, although we do not understand why the Pennsylvania Railroad Company was joined as a defendant, we can not hold that the Carmack amendment was not applicable, or that the suit was so brought as to exclude its application. The demurrer to the third plea was therefore properly sustained.

The first bill of exceptions presents the ruling of the lower Court in admitting a letter of R. L. Franklin, freight claim agent of the Pennsylvania Railroad Company. We understand that the letter was mainly objected to on the theory that the Carmack amendment did not apply, and that therefore the appellant was not in any way responsible for what was said by the agent of the Pennsylvania Rilroad Company. As we have already indicated our views on that question, it may not be material to discuss this action of the Court, but in our judgment the letter was admissible on another ground. The bill of lading provides that "Claims for loss, damage, or delay must be made in writing to the carrier *at the point of delivery or at the point of origin,* within four months after delivery of the property, or in case of failure to make delivery, then within four months after a reasonable time for delivery has elapsed. Unless claims are so made, the carrier shall not be liable."

It was, therefore, incumbent on the plaintiffs to prove that such claim had been made, either upon the carrier at Pittsburgh, or upon the appellant. The plaintiffs' letter of June 20th, 1910, did make the claim upon the agent of the

B., C. AND A. R. R. CO. vs. SPERBER.        605

Md.]                    Opinion of the Court.

Pennsylvania Railroad Company in Pittsburg, and asked for prompt attention. The plaintiffs received notice from that agent that he had forwarded the papers to Mr. Franklin, in Philadelphia. The letter objected to was from Mr. Franklin, and although it was dated September 1st, 1910, it begins: "Referring to your claim of June 20th, 1910, for value of berries shipped in F. G. E. car 22,009." That was the claim in writing made by the plaintiffs, and this letter was therefore admissible to prove the receipt of it, and we do not understand that its authenticity was denied.

The remaining question to be considered is presented by the latter part of the second prayer of the plaintiff, which was granted, and the second prayer of the defendant, which was rejected—referring to the measure of damages to be allowed. The plaintiffs' prayer, after submitting certain facts for the jury to pass on, concluded, "then the plaintiffs are entitled to recover the value of the said berries on the day of the market on which they would have arrived if they had been forwarded and transported by the Baltimore, Chesapeake and Atlantic Railway Company and the said connecting lines with reasonable care, diligence and exertion, less the charges for transportation and refrigeration of said berries, and in arriving at their verdict they may consider the time when they were ready for delivery to the plaintiffs at Pittsburgh and the plaintiffs so notified." The defendant's prayer was, "The defendant prays the Court to instruct the jury that if their verdict shall be for the plaintiff that the proper measure of damages is the true market value of the berries, had they arrived without delay, less the amount of the value of said berries when they did arrive and were sold and the amount of freight and charges."

It can not be denied that the measure of damages as contended for by the appellant is the correct rule, under ordinary circumstances. The appellant relies on *Woods' Railway Law,* page 1607, where it is said: "Where there has been an unreasonable delay in the delivery of goods, the damages *prima facie* would be the difference in the value of the

goods at the place of destination at the time they ought to
have been delivered, and the value at the time when they are
delivered, in fact." And it claims that that rule is sustained
in this State by the cases of *B. & O. R. R. Co.* v. *Whitehill,*
104 Md. 295, and *P. B. & W. R. R. Co.* v. *Diffendal,* 109
Md. 494.

But the difficulty is that the berries *were not delivered* to
the plaintiffs, and were sold by the Pennsylvania Railroad
Company. The defendant itself proved that they were turned
over by the Pennsylvania Railroad Company to a commission
merchant of Pittsburgh for sale, and that he sold them and
realized from the sale the sum of $515.70. The plaintiffs
proved that they had not received anything for them. The
commission merchant did not say whether he had turned the
money over to the company, but as he sold the berries for it,
we must presume that he did, in the absence of some evidence
to the contrary.

It will be observed in the quotation from *Woods' Railway
Law* that the damages are measured by the difference in the
value of the goods at the time they ought to have been deliv-
ered, "and the value at the time *when they are delivered."*
And the cattle in *Whitehill's case* and the peaches in *Diffen-
dal's case* were delivered, and the plaintiffs received the
benefit of such prices as they brought. But if the appellant
is entitled to be credited with the $515.70, then the plaintiffs
would lose that amount, although the Pennsylvania Railroad
Company, the connecting carrier, has it in hand. Of course,
a shipper is not entitled to recover from the carrier the total
value of the goods shipped, if he received them, and obtained
or can obtain something for them, but when the carrier
retains possession of them and sells them for what he can
get in their then condition, and retains the money, the plain-
tiff should not be required to give credit for what he has not
received. Under the circumstances, therefore, there was no
error in the ruling of the Court on the measure of damages.

In our judgment, the plaintiffs' second prayer was properly granted, and the defendant's prayers were properly rejected. No objection to the plaintiffs' third prayer has been made. It follows from what we have said that the judgment must be affirmed.

> *Judgment affirmed, the costs to be paid by the appellant.*