(156 App. Div. 849.)

### HOWATT v. BARRETT.

(Supreme Court, Appellate Division, First Department. May 29, 1913.) ·

1. CARRIERS (§ 94*)—EXPRESS SHIPMENT—ISSUES AND PROOF.
    Where a C. O. D. express shipment was made to a destination on a
    connecting line, and about the time the goods should have been delivered
    there the shipper asked the initial carrier to change the consignee and
    ship to a different destination and consignee without the C. O. D., the
    shipper, in an action against the initial carrier for failure to deliver in
    accordance with the second direction, could not complain of failure to
    deliver to the original consignee.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456;
    Dec. Dig. § 94.*]

2. CARRIERS (§ 173*)—EXPRESS SHIPMENTS—MODIFICATION OF CONTRACTS.
    Where a C. O. D. express shipment was made to a destination on
    a connecting line, and about the time the goods should have been de-
    livered there the shipper asked the corresponding department of the
    initial carrier to make the shipment without C. O. D. and reship to a
    different consignee at a different destination, and the initial carrier at-
    tempted to so do, but the connecting carrier, misunderstanding, or un-
    willing to take the risk of reshipping, returned the goods to the ship-
    per, the initial carrier was not liable as on a new contract, as it simply
    carried out a request of the shipper.
    [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 760–763, 781–
    784; Dec. Dig. § 173.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Appellate Term, First Department.

Action by Michael E. Howatt against William M. Barrett, as President of the Adams Express Company. From a judgment of the Appellate Term (78 Misc. Rep. 156, 137 N. Y. Supp. 915), reversing a judgment of the Municipal Court for defendant, defendant appeals. Reversed, and judgment of Municipal Court affirmed.

See, also, 154 App. Div. 894, 138 N. Y. Supp. 1122.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Edward V. Conwell, of New York City, for appellant.

George A. Ferris, of New York City (Jacob Ansbacher, of New York City, on the brief), for respondent.

LAUGHLIN, J. This is an action by the consignor of goods against the express company for breach of contract in failing to deliver the same to the consignee. The goods were delivered to the express company in the city of New York on the 19th day of March, 1910, marked "C. O. D. $44.50," and addressed to "J. T. Saidy, 427 Thompson Ave., Excelsior Springs, Mo.," and the company issued to the plaintiff a nonnegotiable bill of lading therefor without requiring prepayment of the express charges. The point of destination was not on defendant's line, but on that of the Wells Fargo Express Company. It was provided in the bill of lading that if the C. O. D. package was not paid for within 30 days the carrier was at liberty to return it, and the shipper would pay the transportation charges both ways. The plaintiff had shipped other goods by the express company, and the company customarily collected its charges from the consignee. Six days after the goods were delivered to the defendant for shipment, and when in due course they should have arrived at their destination, plaintiff called at its office with the bill of lading and requested one of its clerks "in charge of the correspondence department" to have the package "forwarded to M. A. Saidy, Denver, Colorado, which was on the line of the Wells Fargo Company but not on that of the defendant, and to deliver the package less the C. O. D."; and the clerk thereupon indorsed on the bill of lading, "Del. to M. A. Saidy, Denver, Colo., without C. O. D.," and the date, March 25, 1910.

[1, 2] The action, as shown by the complaint and by a statement of counsel for plaintiff on the trial, is brought upon the theory that this transaction, six days after the making of the original contract, constituted a new contract, which obligated the defendant to deliver the goods to the new consignee at the changed destination; and the breach of contract is predicated solely on its failure to do so. It is quite evident, from the fact that the plaintiff called upon the clerk in the correspondence department and requested to have the goods forwarded to another consignee and at a different destination, that he understood that the defendant merely undertook to communicate his request to the express company at the original destination, and that it was not within its power to make a new contract for the further transportation of the goods if they had been delivered, or, even if the goods had not been delivered, between points wholly on the Wells Fargo Com-

pany line, neither of which was on defendant's line; and this plainly appears from the fact that he called at the defendant's office from time to time thereafter for the purpose, manifestly, of ascertaining what information defendant had received, and was told that the defendant had written, but had not received any reply, and that "it would have to take its usual course," but that "it will be carried as directed." There is no evidence as to whether the delivery of the goods was tendered at the original destination; but, inasmuch as the action is not predicated on the original contract, that question is immaterial, and it would seem that plaintiff, in view of the request made with respect to change of destination and consignee, is in no position to complain of failure to deliver according to the *original* contract.

The plaintiff showed that the goods were not received at the new destination; and a witness, who was an employé of the Wells Fargo Company, was asked by the court why the goods were not delivered at the new destination, and thereupon counsel for defendant volunteered to explain, and was permitted to state on the record without objection, in effect, that the defendant communicated with the Wells Fargo Company at the original destination, requesting it to forward the goods to the changed destination and consignee as plaintiff desired, and that the Wells Fargo Company either misunderstood the new directions or hesitated to act thereon, since they involved a change, not only of destination, but of consignee as well, and returned the goods to the shipper. The goods appear to have been returned wholly by the Wells Fargo line, for they were tendered back to the shipper by that company, and it demanded express charges to and from the original destination. Plaintiff refused to accept a return of the goods, on the ground that there should be no express charges, and that, owing to the fact that the market price of the goods had changed, he would lose his profit thereon.

The reversal at the Appellate Term was based on the amendment to the Interstate Commerce Act known as the "Carmack Amendment" (Act June 29, 1906, c. 3591, 34 U. S. Stat. at Large, 595, § 7 [U. S. Comp. St. Supp. 1911, p. 1307]), which, with respect to interstate commerce, renders the initial carrier liable "to the lawful holder" of the receipt or bill of lading "for any loss, damage or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby interposed."

There is no evidence that the goods were *damaged,* and the contrary affirmatively appears. The only theory upon which it is claimed that they were *lost,* to bring the case within the statute quoted, is that the Wells Fargo Company, by not delivering them according to the *new* contract, and by asserting a lien thereon for express charges when it had not performed either contract, was guilty of conversion. It appears, however, that the plaintiff did not refuse to accept a return of the goods on the ground that delivery to either consignee had not been tendered; and, while he objected to the express charges, he did

not place his refusal to accept the goods on that ground alone, but interposed an insurmountable objection, namely, in effect, that by accepting a return of the goods he would lose his profit thereon.

The learned counsel for the appellant contends that this statutory liability, so far as it relates to a loss of goods, contemplates *an actual* loss, and he cites Greenwald v. Weir, 130 App. Div. 696, 115 N. Y. Supp. 311, affirmed sub nom. Greenwald v. Barrett, 199 N. Y. 170, 92 N. E. 218, 35 L. R. A. (N. S.) 971, as authority therefor; but counsel for the respondent contends that the statute extends to any loss or damage, whether arising from a conversion of the goods, or delay in transit, or a failure to follow shipping instructions, by which additional expense is caused, and he cites in support of that contention De Winter & Co. v. Texas Central Railway, 150 App. Div. 612, 135 N. Y. Supp. 893, Lord & Bushnell Co. v. Texas Railway, 155 Mo. App. 175, 134 S. W. 111, Baltimore, C. & A. Railway v. Sperber, 117 Md. 595, 84 Atl. 72, and Missouri, K. & T. Railway v. Carpenter, 52 Tex. Civ. App. 585, 114 S. W. 900. In the view we take of the evidence, however, no opinion need be expressed on that point, for the decision of the appeal does not depend on the construction of the Interstate Commerce Act.

The Wells Fargo Company received the communication from the defendant with respect to forwarding the goods to Colorado before it complied with the original contract; but, as has been seen, the action is not predicated upon the failure to deliver according to the original contract, and it is manifest that the plaintiff could not justly complain of such failure. If, on a tender of the return of the goods, plaintiff had declined to pay the express charges on the theory that his last instructions had not been carried out, it may well be that the Wells Fargo Company would have recognized that it was not entitled to a lien for such charges and would have delivered the goods; but, however that may be, his right to recover in this action depends upon whether the defendant made a new and valid contract with him for the delivery of the goods at the new destination and to the substituted consignee, and whether he has shown any damages for its failure to so deliver.

We think that there was no new contract, and that the defendant merely undertook to request the final carrier to change the destination of the goods and the name of the consignee, and that it is not liable for not succeeding in so doing. Sheehy v. Wabash R. R. Co., 169 Mich. 604, 135 N. W. 655, 38 L. R. A. (N. S.) 1126. Moreover, the plaintiff failed to prove the value of the goods, which consisted of laces. The only evidence which he offered on that subject was excluded under objection, and there is nothing in the record bearing upon the value of the goods, excepting a statement by the attorney for the plaintiff on the trial that his client claimed to be entitled to recover $44.50, "the face value" of the goods, together with interest thereon; but there was no admission that such was the value of the goods, and these figures were evidently taken from the original directions on the bill of lading with respect to the amount to be collected on the package. One of the grounds of motion on which the complaint

was dismissed in the Municipal Court was that no legal damages had been shown, and that the measure of damages was the difference between the value of the goods at the time when they should have been delivered and at the time return thereof was tendered, neither of which was shown. That motion sufficiently presented the point that plaintiff had failed to show either the value of the goods or recoverable damages.

It follows, therefore, that the determination of the Appellate Term should be reversed, with costs, and the judgment of the Municipal Court affirmed, with costs. All concur.