**JULIUS KLUGMAN'S SONS, Inc., v. OCEANIC STEAM NAV. CO., Limited, et al.**

District Court, S. D. New York.
June 26, 1930.

Theodore L. Bailey, of New York City, for plaintiff.

Sutta & Frankel, of New York City (Nathan Frankel, of New York City, of counsel), for defendant P. H. Keahon, Inc.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Ray Rood Allen and Norman M. Barron, both of New York City, of counsel), for defendant Oceanic Steam Nav. Co.

PATTERSON, District Judge.

This action is brought to recover the value of furs lost in transit or in warehouse. A box of furs shipped in London was found in New York to contain only a part of the original contents. Prior to the discovery of the shortage, the box had been in the custody successively of Oceanic Steam Navigation Company, Limited, as ocean carrier, P. H.

Keahon, Inc., as truckman, and West Eighteenth Street Warehouse Corporation, as warehouseman. The plaintiff joined all three as defendants, charging liability in the alternative under section 213 of the New York Civil Practice Act.

At the trial the plaintiff concentrated upon fastening liability on the ocean carrier, which had custody of the goods (either by connecting carriers as agents or by itself) from shipment in London until their arrival in New York. The duty not having been paid at New York, the United States caused the goods to be turned over by the carrier to P. H. Keahon, Inc., a trucking concern, which delivered them to West Eighteenth Street Warehouse Corporation. The furs remained in the warehouse a week and were then transported by P. H. Keahon, Inc., to United States Appraisal Stores. The box was there opened and the shortage discovered. The box had been covered stoutly with canvas prior to shipment, and careful scrutiny revealed that the canvas on the bottom had been cut and neatly restitched. The reasonable inference is that the thief extracted the furs by cutting the canvas and removing the bottom boards, later nailing the boards back in place and sewing up the canvas; but there was no evidence to indicate at what stage of the journey the pilfering had taken place. Motions were made by all parties for a directed verdict.

■■ In my opinion, no case has been established against either the truckman or the carrier, the two defendants which resisted liability. As for the truckman, the box was in its custody for short periods of time only. The manner in which the furs were stolen out of the box would indicate that considerable time must have been spent in the process. The pilfering must have occurred while the box was at rest in a secluded place for a substantial time. The plaintiff's own evidence, therefore, tends to negative liability on the part of the defendant P. H. Keahon, Inc.

As for the carrier, the most that can be said is that the loss might have occurred while the furs were in its custody. It is equally possible that the theft took place later, during the week while the furs were in the warehouse. The damage suffered by the plaintiff is undoubted, but as between carrier and warehouseman, there is no indication as to where the loss occurred. The burden of proof is on the plaintiff to show nondelivery by the carrier. It is not sufficient to prove a state of facts as consistent with the occurrence of the loss after delivery by the carrier as before delivery. Canfield v. Baltimore & Ohio R. Co., 75 N. Y. 144; 10 Corpus Juris, p. 372.

■■ The carrier is also protected by the presumption that where goods pass through the hands of successive custodians, in apparent good order, any loss is presumed to have occurred while they were under the control of the last custodian. Canfield v. Baltimore & Ohio R. Co., supra; Chicago & Northwestern R. Co. v. C. C. Whitnack Co., 258 U. S. 369, 42 S. Ct. 328, 66 L. Ed. 665. It is unnecessary to inquire whether the rule rests upon the general principle that things are presumed to remain in their original condition until the contrary is established, or whether the rule is one of convenience, to assist the injured shipper in a case where there is nothing to show which of several custodians is the delinquent one. It may also be said in support of the rule that the final custodian who has received the goods in apparent good order, without noting any defect, should not complain if an unexplained loss is attributed to him rather than to prior custodians; in many cases a careful inspection by him at the time the goods were turned over to him would have revealed the defect, if any then existed, and would have saved him from liability. In any event, the presumption is a recognized one and is applicable to this case. My conclusion, therefore, is that no case was made out against the ocean carrier.

■ The plaintiff insists that these rules do not apply to a suit brought under section 213 of the Civil Practice Act, which reads as follows:

"Where the plaintiff is in doubt as to the person from whom he is entitled to redress, he may join two or more defendants, to the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined as between the parties."

The New York courts have held that the plaintiff, to make out a prima facie case against successive bailees in an action brought under this section, need only prove the bailments and the damage; he is not obliged to present evidence pointing to fault by any particular defendant, in order to avoid a nonsuit at the close of his own case. In other words, the plaintiff is entitled to the benefit of the evidence which any defendant may turn up in his effort to clear himself, and to throw responsibility upon the other defendants. S. & C. Clothing Co. v. U. S. Trucking Corp., 216 App. Div. 482, 215 N. Y. S. 349; Thermoid Rubber Co. v. Baird,

124 Misc. Rep. 774, 209 N. Y. S. 277. While this construction undoubtedly represents a liberal view as to the effect of the statute, which has to do primarily with a point of pleading, the result is desirable. It is in the interest of prompt justice that the entire matter be heard in one suit. Otherwise, it might happen that the complaint was dismissed as to a defendant and that later on a remaining defendant presented clear proof pointing toward the liability of the defendant who was then no longer in the case.

It is quite a different thing, however, to say that the plaintiff is entitled to have the liability of each separate defendant submitted to the jury, merely because he has suffered a loss through the fault of one of several defendants and because he has seen fit, under this statute, to sue all who may conceivably be liable to him. A man standing in a crowd may be knocked down by some one in it; this statute does not mean that in his uncertainty as to which of the other twenty persons present was responsible, he may sue all twenty, prove merely his injury and their presence on the spot, and then have the court submit to the jury the liability of each of the defendants. I take it that the burden still rests upon the plaintiff, at the close of the entire case, to produce something more than surmise to show which defendant is culpable, and that any defendant against whom there is nothing more than surmise is entitled to a directed verdict. In my opinion, the New York cases wherein section 213 has been construed do not indicate any change in this settled rule.

■ There is another answer to the plaintiff's argument based upon section 213. It may be granted that this statute, in so far as it affords greater flexibility in the joinder of defendants in a single suit and in the pleading of a cause of action in the alternative, is generally applicable to suits brought in or removed to the United States courts. See Sawin v. Kenny, 93 U. S. 289, 23 L. Ed. 926; United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762. So also as to its effect upon the power of the court to dismiss the complaint at the close of the plaintiff's proof. As to involuntary nonsuits, the rule followed by the state courts furnishes the practice for the Federal courts, by virtue of the Conformity Act (USCA title 28, § 724). Coughran v. Bigelow, 164 U. S. 301, 17 S. Ct. 117, 41 L. Ed. 442. But the law is otherwise as to the direction of a verdict when all parties have rested. The rule in the United States courts is that whenever the state of the evidence will not warrant a verdict for a party, it is the duty of the court to direct the jury to find a verdict against such party, and this rule is held to be not subject to modification by state statutes. Barrett v. Virginian Ry. Co., 250 U. S. 473, 39 S. Ct. 540, 63 L. Ed. 1092; Atchison, etc., Ry. Co. v. Spencer (C. C. A.) 20 F.(2d) 714. On the assumption, therefore, that this section of the Civil Practice Act goes to the extent of requiring a state court, in cases brought against defendants in the alternative, to submit to the jury the issue as to the liability of each defendant, and that it thus deprives the court of the power to direct a verdict in favor of those defendants against whom the evidence does not rise above speculation and conjecture, the statute in this respect cannot be followed in this court.

This is a hard case for the plaintiff. It is entitled only to a verdict against the warehouse company which seems to be financially irresponsible. It was doubtless to meet such situations that the Carmack Amendment (49 USCA § 20, pars. 11, 12), allowing redress against the initial carrier, was added to the Interstate Commerce Act (Baltimore, etc., R. Co. v. Sperber, 117 Md. 595, 84 A. 72); but that statute concededly does not apply to this case.

I therefore direct a verdict in favor of the defendant Oceanic Steam Navigation Company, Limited, and P. H. Keahon, Inc., against the plaintiff, and a verdict in favor of the plaintiff against West Eighteenth Street Warehouse Corporation.