THE ATCHISON, TOPEKA & SANTA FE RAILWAY COM-
PANY V. P. D. SCHRIVER.

No. 14,394.    (84 Pac. 119.)

SYLLABUS BY THE COURT.

1. RAILROADS—*Non-delivery of Goods Consigned—Conversion.*
It is the duty of a railway company which has received from
the owner for carriage a quantity of goods consigned to the
shipper's order to deliver in accordance with such order, and
only in accordance therewith; and a failure or refusal, with-
out lawful excuse, so to deliver will render the carrier liable
in conversion for the value of the goods.

2. ——— *Order to Divert to Another Destination—Demand for
Delivery.* An order from the shipper of goods consigned to
the shipper's order duly accepted by the carrier and noted on
the original bill of lading by its agent, directing a diversion
of the goods from one destination to another, is equivalent
to a demand for delivery.

3. ——— *Failure to Divert Not Excused.* The fact that a per-
son to be notified of the arrival of goods consigned to the
shipper's order takes them from the carrier's possession with-
out its knowledge or consent, and detains them in his own
warehouse, will afford no justification for the carrier's fail-
ure to comply with an order from the shipper diverting the
consignment.

4. ——— *Accession — Withholding Delivery of Consignment.*
The general rule that an accession falls to the principal ap-
plies to sacks supplied by a dealer in flour to a manufacturer
to be used in the production of sacks of flour for the market;
and the claim of a dealer to the sacks of a car-load of sacked
flour which a carrier has received from the manufacturer
for transportation according to the shipper's order will not
justify the carrier in withholding delivery according to such
order.

5. ——— *Representations of Claimant — Refusal to Deliver.*
The fact that such a claimant represents to the carrier that
he expects to be able to arrive at an understanding with the
shipper within a few days will not justify it in withholding
delivery according to the shipper's order.

6. ——— *Conversion—Election by Consignor—Effect.* After a
shippers of goods consigned to the shipper's order has elected
to treat the property as converted on account of the carrier's
wrongful neglect or refusal to deliver according to his order,

and has notified the carrier of such election, he is no longer under obligation to defend suits relating to the property or to aid the carrier in disposing of it.

Error from Marion district court; R. L. KING, judge. Opinion filed January 6, 1906. Affirmed.

*W. R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*Kellogg & Madden,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: On September 22, 1903, the plaintiff delivered to the defendant at Florence a car-load of flour for shipment, consigned to "shipper's order; notify D. B. Kirk & Co., Kansas City, Mo." On the following day the plaintiff drew on Kirk & Co. for the price of the flour, attaching the bill of lading to the draft. On September 25 the draft was dishonored on account of a claimed defect in the quality of the flour. The plaintiff then recalled the draft and bill of lading, and took the bill of lading to the defendant's agent at Florence and ordered the flour diverted to Nashville, Tenn. On October 2 the bill of lading was changed according to direction, and the order of diversion was duly transmitted to the company's agent at Kansas City.

On October 5, when the defendant attempted to comply with the order of diversion, it found the flour in the possession of Kirk & Co. It seems that employees of Kirk & Co. had discovered the car on a side-track leading to the firm's warehouse, and had taken possession of it and unloaded it without the knowledge of their superiors, and without the knowledge of the defendant. In consequence of this fact the defendant was unable to comply with its contract to transport to Nashville.

The defendant, through its agent at Florence, then conferred with the plaintiff, and, after explaining the situation, gave the plaintiff the impression that the Kirk & Co. draft would be taken up if it were returned

to Kansas City. The agent further said there would be a speedy adjustment of the claim, he thought; that officials were coming to Florence for that purpose; and suggested that the plaintiff return the draft and bill of lading to Kansas City for collection. The plaintiff consented to do as the agent advised, but stated to him at the time that he would hold the defendant responsible for the flour.

Afterward the defendant regained possession of the flour, but did not forward it according to the shipper's order. Kirk & Co., having furnished the sacks in which the flour was contained, claimed title to them, and also claimed that they expected to come to an understanding with the plaintiff within a few days. The second draft was not paid; and on October 10 Kirk & Co. commenced an action of replevin against the defendant for the sacks, which resulted on October 27 in a judgment for the defendant. On October 29 Kirk & Co. garnished the flour in the defendant's possession, and a portion of it was afterward sold to satisfy orders made in the case. The plaintiff was duly notified by the defendant of the pendency of both the Kirk & Co. suits, but declined to appear or defend.

After a request upon the plaintiff for instructions the remainder of the flour was disposed of by the defendant under the statutes of the state of Missouri, and the net proceeds held for the plaintiff's use. After a demand upon the defendant for the full value of the car of flour, the plaintiff brought an action and obtained a verdict and judgment.

In answer to special questions the jury found the material facts of the controversy. The plaintiff furnished the only evidence relating to the drawing of the second draft. From that evidence the jury found the draft was made under the advice of the defendant. The statement to defendant's agent that the plaintiff would hold it responsible for the flour occurred in the same conversation, and was not denied. Hence the finding fairly may be construed to exclude, as the evi-

dence and general verdict clearly do, the notion that the plaintiff waived any of his rights or in any manner released the defendant from liability by making and sending forward the second draft with the bill of lading attached.

With the record in the condition noted the case may be determined upon the broad ground marked out by counsel for defendant, viz.: Did the defendant do its whole duty, and was the plaintiff's loss the result of his own laches? The defendant's contract was to deliver according to the shipper's order, and when it allowed Kirk & Co. to obtain possession of the flour without presentation of the bill of lading it was guilty of a misdelivery. The request for a diversion of the consignment from Kansas City to Nashville was a demand for the property—an order from the shipper— with which it was the defendant's duty to comply. That it could not do so was the result of its own wrongful act. Except for the inexcusable loss of possession it might have diverted the car immediately upon receiving instructions to that effect, and all subsequent complications were the result of that original fault.

The fact that the bags when furnished to the plaintiff belonged to Kirk & Co. gave the latter no right to the possession of them, much less the right to detain the entire consignment of flour. The bags were voluntarily turned over to the plaintiff to be filled with flour. In a certain sense the process of manufacturing flour for market is not entirely complete until the flour is encased in sacks. At least, the product is not merchantable until that or its equivalent is done, since the commodity cannot be handled in bulk. When once a bag has been filled with flour the two cannot be separated without loss, and it is not contemplated that they shall be separated, except as the flour is finally consumed. For all practical commercial and legal purposes the bag and its contents become inseverable. They are no longer independently identified as so many pounds of flour and a bag, but they become united in

a single entity—a sack of flour. The flour, however, is the principal thing. The sack is but a minor accessory to the flour, and in comparison with it is of an almost negligible value.

Therefore, under ordinary circumstances, and in the absence of an express agreement to the contrary, a party supplying sacks will be held to consent that his subsidiary and relatively unimportant contribution to the final product shall become an accession to the contribution of the manufacturer. If by accident, inadvertence, mistake or other conduct not involving fraud a sack be improperly filled the result is the same as if it were lost or destroyed. The remedy is not by replevin, but through an action for damages, since the law as a means of justice will not jeopardize the overwhelming mass and value of the article for that which is insignificant and incidental. (*D. Merritt v. Johnson,* 7 Johns. [N. Y.] 472, 5 Am. Dec. 289; *Wetherbee v. Green,* 22 Mich. 311, 320, 7 Am. Rep. 653; *Pulcifer v. Page,* 32 Me. 404, 54 Am. Dec. 582; *Arnott and Archer v. K. P. Rly. Co.,* 19 Kan. 95.) From this it follows that the claim of Kirk & Co. to the sacks furnished no justification for the defendant's failure to obey the order of diversion.

The defendant having suffered itself to be deprived of the property, and having offered an impotent excuse for not complying with the demand lawfully made upon it, the plaintiff had the right to treat the property as converted. (6 Cyc. 472.) This he did on October 6, and so notified the defendant. Although the defendant regained possession of the flour it neither offered to perform the contract of carriage nor to return the property. It merely notified the plaintiff to defend certain suits. These suits having been commenced after the plaintiff had elected to hold the defendant responsible in damages, and had so advised the defendant, they did not concern the plaintiff, and he was not guilty of laches in ignoring them.

"Where a common carrier fails and refuses to de-

liver to the consignee property shipped over its line, the consignee has a right to elect to claim damages for the value of the property, and to waive all title to it; and, after the carrier has been notified of such election, the property belongs to it, and is not subject to attachment in its hands as being the property of the consignee." (*Hamilton v. C. M. & St. P. Ry. Co.*, 103 Iowa, 325 [syllabus], 72 N. W. 536.)

For like reasons the plaintiff was not obliged to direct the disposition to be made of the remnant of the property in the defendant's custody after the execution sale, and the conclusion upon the whole matter must be that the defendant was guilty of a breach of duty, while the plaintiff was free from fault.

A carrier is not warranted in refusing a rightful claim to property because one whose title is shown to be invalid by its mere description represents that he expects to be able to arrive at an understanding with the owner within a few days. Therefore, the first instruction asked by the defendant was properly refused. The fourth instruction asked was incorrect for reasons already set forth; and, in view of the facts found and concerning which there is no controversy, the instructions which were given and which are now assailed could scarcely have been prejudicial, even if it be conceded they were erroneous.

The judgment of the district court is affirmed.

All the Justices concurring.