## CENTRAL OF GEORGIA RAILWAY CO. *v.* COUNCIL.

1. Where by the terms of its bill of lading the initial carrier agreed to transport a car of peaches from a point in this State to a point in another State, the transportation to be made over its own lines and those of connecting carriers, the shipper, if the owner, had the right, as an incident to the contract of carriage, before the shipment reached the point of destination named in the bill of lading, to direct the terminal connecting carrier to divert the shipment to another place upon its lines; and if such terminal carrier failed to divert the shipment as directed by the shipper, in consequence of which the peaches were damaged, the initial carrier would be liable to the shipper for such damages, although no notice of the requested diversion was given to the initial carrier.
2. Under the Carmack amendment to the interstate-commerce act, as amended by the Cummins act, any common carrier subject to the provisions of said act, receiving goods for transportation from a point in this State to a point in another State, is required to issue a receipt or bill of lading therefor, and is liable to the lawful holder thereof for any damage to such property caused by it or by any common carrier to which such property may be delivered or over whose line or lines it may pass within the United States, when transported on a through bill of lading; and no contract, receipt, rule, regulation, or other limitation of any character whatsoever shall exempt such initial carrier from such liability.
3. A rule of the initial carrier, which stipulated that it would not be liable for a failure to divert any shipment, where the shipment had passed beyond its own lines of railway, unless such failure was caused by the negligence of its own employees, was void and illegal under the said Carmack amendment, notwithstanding its approval by the Interstate Commerce Commission.

No. 5456. JANUARY 13, 1927.

The Court of Appeals (in Case No. 17303) requested the instruction of the Supreme Court upon the following question, a determination of which is necessary for a decision of this case: The Central of Georgia Railway Company (the initial carrier) and its connecting carriers transported, under a through bill of lading issued by the initial carrier, five car-loads of peaches from Americus, Georgia, to Buffalo, New York: The only car-load involved in

---

Carriers, 10 C. J. p. 65, n. 43 New; p. 137, n. 48; p. 524, n. 8; p. 526, n. 41 New.

this question was that contained in car No. 25759, which, before its arrival at Buffalo, was ordered diverted to New York City. The shipper's order to divert was given to an authorized agent of the Pennsylvania Railroad, a connecting carrier of the initial carrier and the terminal carrier of the shipment. No notice of the requested diversion was given to the initial carrier. The Pennsylvania Railroad failed to divert the shipment, and this failure caused damage to the shipment. One of the terms of the bill of lading provided that "any alteration, or addition, or erasure in this bill of lading, which shall be made without the special notation hereon of the agent of the carrier issuing this bill of lading, shall be without effect, and this bill of lading shall be enforceable according to its terms." There was no written alteration or addition upon the bill of lading, and no erasure thereon, and of course, therefore, no special notation thereof by any one upon the bill of lading. Furthermore, at the time the shipment was received by the initial carrier there was filed with and approved by the Interstate Commerce Commission a rule and regulation of the initial carrier which stipulated, in substance, that it would not be liable for a failure to divert any shipment, where the shipment had passed beyond its own lines of railway (as it had in this case), unless the failure to divert was caused by the negligence of its own employees. The only bill of lading issued was the original through bill issued by the initial carrier, and the failure to divert the shipment was not caused by the negligence of any employee of that carrier. Under these facts and under the Carmack-Cummins amendment to the interstate-commerce act (U. S. Comp. St. Supp. 1923, § 8604 (a)), was the initial carrier liable for the damage to the shipment occasioned by the failure of the terminal carrier to divert the shipment to New York City?

*H. A. Wilkinson,* for plaintiff in error.

*James A. & John A. Fort,* contra. *Watkins & Asbill,* for persons at interest, not parties to the record.

HINES, J. The Central of Georgia Railway Company and its connecting carriers transported, under through bill of lading issued by said company, a car-load of peaches from Americus, Georgia, to Buffalo, New York. Before the arrival of this car at Buffalo, the shipper ordered an authorized agent of the Pennsylvania Railroad, one of the connecting carriers and the terminal carrier of the

shipment, to divert this car to New York City. No notice of the requested diversion was given to the initial carrier. The Pennsylvania Railroad Company failed to divert the shipment, and this failure caused damage to the shipment. One of the terms of the bill of lading provided that "any alteration, or addition, or erasure in this bill of lading, which shall be made without the special notation thereon of the agent of the carrier issuing this bill of lading, shall be without effect, and this bill of lading shall be enforceable according to its terms." There was no alteration of, addition to, or erasure in this bill of lading. At the time the shipment was received by the initial carrier there was filed with and approved by the Interstate Commerce Commission a regulation by the initial carrier which stipulated that it would not be liable for failure to divert any shipment, where the shipment had passed beyond its own lines of railway, unless the failure to divert was caused by the negligence of its own employees. The only bill of lading issued for the transportation of this property was the original one issued by the initial carrier. The failure to divert the shipment of this car was not caused by the negligence of any employee of that carrier. Under the Carmack-Cummins amendment of the interstate-commerce act, and in view of the facts stated, was the initial carrier liable for the damage to the shipment occasioned by the failure of the terminal carrier to divert the shipment to New York City?

The applicable portion of the Carmack-Cummins amendment to the interstate-commerce act is as follows: "Any common carrier, railroad or transportation company subject to the provisions of this act, receiving property for transportation from a point in one State . . to a point in another State . . shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass within the United States . . when transported on a through bill of lading, and no contract, receipt, rule, regulation, or other limitation of any character whatsoever, shall exempt such common carrier, railroad or transportation company from the liability hereby imposed." U. S. Comp. Stat. 1923 Supp. § 8604 a.

By the terms of its bill of lading the initial carrier received this car of peaches at Americus in this State, and agreed to transport it to Buffalo in the State of New York. The car of peaches was so transported; but before its arrival at Buffalo, the shipper, who we assume was the owner, directed an authorized agent of the terminal carrier, which was a connecting carrier of the initial carrier, to divert the shipment to New York City. No notice of the requested diversion was given to the initial carrier. The connecting terminal carrier failed to divert the shipment, and this failure caused the peaches to be damaged. It is insisted by counsel for the initial carrier that its liability can not be extended beyond the contract evidenced by the bill of lading, and that the initial carrier thereunder would only be liable for the carriage of the goods from the point of origin to the point of destination safely and in good order, and that the initial carrier would not be liable for any damages sustained by the shipper by reason of the failure of its connecting carrier to divert the goods from the point of destination named in the bill of lading to another place, when such diversion was requested of such carrier by the shipper. It is undoubtedly true that the initial carrier was only bound by the terms expressly or impliedly embraced in its bill of lading, and would not be required to perform any duties not imposed on it by such terms. If the right of the shipper to divert the shipment from the point of destination named in the bill of lading to New York City did not exist under this bill of lading, then the initial carrier would not be liable for damage sustained by failure of the connecting and terminal carrier to make the diversion. Did the shipper under this contract of carriage have the right to divert the shipment? From the question propounded by the Court of Appeals it does not appear that this right was expressly provided for in the bill of lading. Was such right an incident to the contract of shipment? In other words, can a shipper, who is the owner of goods shipped, stop the shipment short of the point of destination named in the bill of lading, or divert the shipment from such point to another place? The carrier is the bailee of the shipper to transport his goods. Is the shipper, after making a contract with the carrier to transport a shipment from one point to another, obliged to permit the carrier to take them to such point? We think not. The shipper, if the owner, can stop the goods short of

the place of destination named in the contract of shipment. He can likewise divert the shipment while it is moving under the bill of lading, and before it reaches such point of destination, to another place. The contract is to deliver the goods at the place named by the shipper, unless the shipper directs them to be delivered at a different place.

In L. & N. W. Ry. Co. *v.* Bartlett, 7 H. & N. 400, 158 English Reports (Reprint), 529, Baron Bramwell said: "It would probably create a smile anywhere but in a court of law, if it were said that a carrier could not deliver to the consignee at any place except that specified by the consignor. The goods are intended to reach the consignee, and provided he receives them it is immaterial at what place they are delivered. The contract is to deliver the goods to the consignee at the place named by the consignor, unless the consignee directs them to be delivered at a different place." In Scothorn *v.* So. Staffordshire R. C., 8 Exchequer, 341, 346, 155 Rep. 1378, it was said: "A carrier is employed as bailee of a person's goods for the purpose of obeying his directions respecting them, and the owner is entitled to receive them back at any period of the journey where they can be got at. To say that a carrier is only bound to deliver goods according to the owner's first directions is a proposition wholly unsupported either by law or common sense." It may be stated broadly that the consignor, if true owner of the property, has generally, subject to the payment of the original charges, the right to direct a change in its destination, so long as it is in the carrier's custody, and before it reaches the point of destination designated in the bill of lading, and he may have it delivered to a different consignee. This right is recognized by the great weight of the authorities. 10 C. J. 84, § 87; Michigan So. etc. R. Co. *v.* Day, 20 Ill. 375 (71 Am. D. 278); Atchison etc. Ry. Co. *v.* Schriver, 72 Kan. 550 (84 Pac. 119, 4 L. R. A. (N. S.) 1056); Ryan *v.* Great Northern Ry. Co., 90 Minn. 12 (95 N. W. 758); Lewis *v.* Galena etc. R., 40 Ill. 281; Strahorn *v.* Union Stock Yards etc. Co., 43 Ill. 424 (92 Am. D. 142); Cincinnati &c. R. Co. *v.* Steele, 140 Ky. 383 (131 S. W. 22, 140 Am. St. R. 388); Ft. Worth &c. Ry. Co. *v.* Caruthers (Tex. Civ. App.), 157 S. W. 238; Lord etc. Co. *v.* Texas etc. R. Co., 155 Mo. App. 175 (134 S. W. 111); Wente *v.* Chicago etc. Ry. Co., 79 Neb. 179 (115 N. W. 859, 15 L. R. A. (N. S.) 756); 4

R. C. L. 833, § 287; 2 Hutchinson, Carriers (3d ed.), §§ 660, 661, 735. The right of the shipper to divert a shipment seems to have been recognized by the initial carrier, by the fact that it had at the date of this shipment a rule and regulation on file with the Interstate Commerce Commission, declaring that it would not be liable for a failure to divert any shipment, where the shipment had passed beyond its own lines, unless the failure to divert was caused by the negligence of its own employees. Such rule or regulation would be meaningless unless the shipper had the right to divert a shipment after it had passed beyond the lines of the initial carrier, and the initial carrier would be liable for damages caused by the failure of its connecting carrier to make a diversion of a shipment after having been requested to do so. The shipper's order for the diversion of this car did not amount to an alteration in or an addition to the bill of lading, which that instrument required to be indorsed thereon by the initial carrier. *Georgia So. & Fla. Ry. Co. v. Tifton Produce Co.,* 160 *Ga.* 213 (127 S. E. 771).

So when the initial carrier received this shipment to be transported by it and its connecting carriers, as its agents, to the point of destination named in its bill of lading, it did so subject to the right of the shipper to have it or its connecting terminal carrier, as its agent, divert this shipment before it reached the point of destination named in the bill of lading; and such terminal carrier was bound to obey the instruction given by the shipper to divert the shipment to another point upon its line of railway. This right is one incident to the contract of shipment. The terminal carrier became the agent of the initial carrier for the purpose of completing transportation and delivering the shipment in compliance with the order for its diversion. N. P. Ry. Co. *v.* Wall, 241 U. S. 87 (36 Sup. Ct. 493, 60 L. ed. 905). Upon the giving of proper instructions for such diversion it was the duty of the terminal carrier, as the agent of the initial carrier, to make the diversion; and where the shipper sustained damages by failure of the terminal carrier to make the diversion, the initial carrier became liable for the damages so sustained by the shipper. S. P. R. Co. *v.* Lyon, 107 Miss. 777 (66 So. 209, Ann. Cas. 1917D, 171); *So. Pac. Co. v. Crenshaw,* 5 *Ga. App.* 675 (63 S. E. 865); *B. & O. R. Co.* v. *Montgomery,* 19 *Ga. App.* 29 (90 S. E. 740); Warley F. & P. Co.

*v.* L. & N. R. Co., 17 Ala. App. 263 (84 So. 311) ; Gamble-Robinson Com. Co. *v.* Union Pac. R. Co., 262 Ill. 400 (104 N. E. 666, Ann. Cas, 1915B, 89) ; Bruner *v.* Grand T. W. Ry. Co., 319 Ill. 421 (150 N. E. 266) ; Produce Trading Co. *v.* Norfolk So. R. Co., 178 N. C. 175 (100 S. E. 316) ; L. Starks Co. *v.* Michigan Cen. R. Co., 207 Ill. App. 333 ; Lanski *v.* Chicago & N. W. Ry. Co., 181 Ill. App. 565 ; Terranova *v.* So. Pac. Co., 206 App. Div. 64 (200 N. Y. Supp. 309).

The purpose of the Carmack amendment is to hold liable the initial carrier, engaged in interstate commerce and receiving property for transportation from a point in one State to a point in another State, for through carriage to the point of destination, using the lines of connecting carriers as its agents, and to deny to the initial carrier its former right to make a contract limiting its liability to its own line. Its main purpose is "to secure the rights of the shipper by securing unity of transportation with unity of responsibility." Atlantic Coast Line R. Co. *v.* Riverside Mills, 219 U. S. 186 (31 Sup. Ct. 164, 55 L. ed. 167, 31 L. R. A. (N. S.) 7) ; Missouri &c. Ry. Co. *v.* Ward, 244 U. S. 383 (37 Sup. Ct. 617, 61 L. ed. 1213) ; *Georgia So. & Fla. Ry. Co.* v. *Tifton Produce Co.,* supra.

For the purpose of fixing liability, the several carriers must be treated, not as independent contracting parties, but as one system; and the connecting lines become in effect mere agents whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier. While under the Carmack amendment the bill of lading issued by the initial carrier covers the entire transaction, by which the liability of each transporting carrier is fixed by its valid, applicable terms, and no new conditions can be introduced by the connecting carrier through a second bill of lading (M. K. & T. Ry. Co. *v.* Ward, supra), the liabilities of the initial carrier under such bill of lading depend upon the acts of Congress, the bill of lading, and common-law principles applicable to the transaction. *Fleshnar* v. *So. Ry. Co.,* 160 *Ga.* 205 (127 S. E. 768). As we have seen above, the right to divert the shipment is an incident to the contract of carriage, and the enforcement thereof does not add new terms to the bill of lading evidencing the contract of carriage.

What is the effect of the rule and regulation of the initial carrier

which had been filed with and approved by the Interstate Commerce Commission, and by which this carrier had declared that it would not be liable for a failure to divert any shipment, where the shipment had passed beyond its own lines, unless the failure to divert was caused by the negligence of its own employees? The evident purpose of this rule or regulation was to exempt the initial carrier from the liability imposed upon it by the Carmack amendment, for failure of one of its connecting carriers to divert a shipment, when requested by the owner thereof. This amendment expressly declares that "no contract, receipt, rule, regulation, or other limitation of any character shall exempt" such carrier from any liability thereby imposed. The Interstate Commerce Commission could not effectually approve a rule or regulation exempting the initial carrier from a liability imposed by this statute. B. & M. Railroad v. Piper, 246 U. S. 439 (38 Sup. Ct. 354, 62 L. ed. 820, Ann. Cas. 1918E, 469).

There is nothing to the contrary of our rulings in Bracht v. San Antonio & A. P. R. Co., 254 U. S. 489 (41 Sup. Ct. 150, 65 L. ed. 366), and Pere Marquette Ry. Co. v. French & Co., Id. 538 (41 Sup. Ct. 195, 65 L. ed. 391). In the first of these cases the shipment was purely intrastate, the goods had arrived at destination, and a new bill of lading had been issued for interstate transportation. It was held by the Supreme Court of the United States that the new bill could not impress the original shipment with an interstate character. In the second case cited, the shipment had arrived at destination, and the carrier at the direction of the person in possession of the bill of lading turned over the car to another carrier for further carriage. That court held that there had been a delivery under the first consignment.

So we are of the opinion that the question of the Court of Appeals should be answered in the affirmative.

*All the Justices concur.*