### ATLANTIC COAST LINE R. CO. et al. v. UNITED STATES et al.

District Court, E. D. Virginia. April 29, 1929.

F. B. Grier, of Greenwood, S. C., Thomas W. Davis and Carl H. Davis, both of Wilmington, N. C., J. M. Townsend, of Petersburg, Va., C. R. Webber, of Baltimore, Md., Scott M. Loftin, of Miami, Fla., J. F. Eshelman, of Philadelphia, Pa., E. Randolph Williams, of Richmond, Va., and James F. Wright and Chas. T. Abeles, both of Norfolk, Va., for plaintiffs.

Major Paul W. Kear, U. S. Atty., of Norfolk, Va., Elmer B. Collins, Sp. Asst. to Atty. Gen., for the United States.

J. Stanley Payne, Nelson Thomas, and D. W. Knowlton, all of Washington, D. C., for Interstate Commerce Commission.

W. G. Brantley, Sr., of Washington, D. C., for Fruit Growers.

Karl Knox Gartner, of Washington, D. C., for intervenors South Carolina Produce Ass'n and another.

Before PARKER, Circuit Judge, and GRONER and SOPER, District Judges.

GRONER, District Judge. This is a suit brought by plaintiffs against the United States pursuant to chapter 32 of Act of October 22, 1913, 38 Stat. 219 (28 USCA §§ 43, 44, 47). The purpose of the suit is to obtain from this court an interlocutory and permanent injunction restraining the enforcement of an order of the Interstate Commerce Commission of February 12, 1929 (I. C. C. Dock. No. 17936). The order in question requires plaintiffs and other carriers to reduce their charge for refrigeration or icing service rendered in connection with the transportation of perishable commodities from Florida, Georgia, South Carolina, North Carolina, and Virginia to destinations in trunkline and New England territory. The record shows that the order of the Commission was issued as the result of an exhaustive investigation and upon evidence supplied by the Commission's own agents and accountants, as well as upon evidence submitted by plaintiffs, who were parties-respondent to the proceeding.

The report of the Commission was filed as an exhibit with the bill of complaint, and embraces 47 printed pages, and shows in great detail the method adopted by the Commission in reaching the conclusion that the existing average per car refrigeration charge, amounting to $73.34, is unreasonable and excessive, and the order sought to be enjoined establishes materially reduced rates based on the Commission's determination that the refrigerator charge should cover only the extra expense occasioned by the actual icing service. The carriers admit that the rates now in effect are too high, but explain that this is so because of a reduction in the cost to them of ice—occurring since the rates were established. They agree that the rates should be reduced accordingly.

They, however, insist that the new rates established by the Commission are so unreasonable as to be confiscatory, and at their instance the Commission has agreed to a rehearing and reconsideration respecting a number of elements entering into the cost of refrigeration and forming the basis of the Commission's conclusion, but has declined to stay the effective date of the order. In their application to the court, plaintiffs, however, confine their objections to a single item in the Commission's compilation of the cost of the service on which the new rate is based. The item in question is, next to the cost of the ice itself, the largest single factor in the aggregate total cost, and is designated in the decision of the Commission, "haulage of ice [4.19 x 1,153 x $0.00165]—$7.97." The

bracketed figures, reversed, represent the per ton mile rate of the average haul of the average quantity (tons) of ice per car, and the matter here in dispute between the Commission and the carriers relates exclusively to the per ton per mile rate allowed by the Commission, the contention of the carriers being that this figure should have been increased to at least 3 mills, which would have resulted in increasing the average charge approximately $6.00 per car. The ground upon which the court is asked to award the injunction is that the Commission erred in a matter of law in adopting its method of determining the cost of hauling the ice, used for refrigeration, in that the Commission confined the items entering into this cost to those additional expenses occasioned to the plaintiffs by the performance of.this particular service, plus a small profit, and did not include other expenses applicable to traffic generally, that is to say, expenses in weighing, inspection, demurrage bureaus, freight traffic department, soliciting, station employees, loss and damage claims, etc. These latter, the plaintiffs insist, are as much an expense of carrying on the business of the railroad as any other expense, and that a pro rata share of them is necessarily incurred in the transportation of the ice in the bunkers of the refrigerator cars as much so as in the transportation of the lading. They insist, therefore, that to withhold a proportionate share of these expenses is to require the hauling at a rate less than the cost of performing the service. The substantial difference between plaintiffs and the Commission grows out of the fact that plaintiffs contend that what the Commission should have done was to have ascertained a proper rate for the transportation of ice independent of any other commodity, and that the Commission therefore erred in law in confining the rate to the cost of the "auxiliary service of icing freight which is already paying through the freight rate its full share of transportation costs."

We have given careful consideration to these divergent views, and we are entirely satisfied that the formula adopted by the Commission was the correct and indeed the only reasonable and proper one in the circumstances. The character of perishable products transported from the five states mentioned, it is true, involves the use of refrigerator cars, but a very large proportion of such shipments move under ventilation and not under refrigeration or icing; but in either case the car is the same and the cost of such a car is greater than a box car, and this fact has always been taken into consideration by the Commission in fixing the line-haul rates on such commodities, with the result that plaintiffs have had and still have the advantage of a higher rate based upon the additional cost of the car and the additional cost of hauling it. When, in addition to the car, the carrier is required to furnish the ice for refrigeration, obviously it should receive all that this additional service costs it and a reasonable profit for the service, and the adjustment of this compensation is based on an allowance to the carrier, as a separate charge, of all such extra costs and by confining the line-haul rates to the transportation service rendered whether or not ice is furnished. We do not think it can be reasonably contended that the ice itself is a part of the lading. It seems to us very clear that it is but an added convenience furnished by the carrier, at the instance of the shipper, in all respects like the car in whose bunkers it is placed. If, instead of ice, electrical refrigeration were used, the result would be the same so far as the protection of the perishables is concerned, but it would hardly be contended that the freight rate on the lading should be increased by adding to its weight the weight of the patented apparatus as a means of ascertaining the reasonable charge for the transportation of the lading. Obviously, it seems to us, its cost, its maintenance, depreciation, together with the added burden thereby imposed in operation, would be the factors in determining the added and separate cost to the lading of the refrigeration furnished. We can see no difference in principle because the refrigeration is furnished by ice. The carrier should, in such case, receive, as the Commission finds, "every cent of the cost which is caused by the icing service and would not be incurred if that service were eliminated," and no more. If the different elements entering into this added cost have been given due consideration by the Commission, as to which we express no opinion, since the entire record is not now before us, we are of opinion that the result should not be disturbed.

We think the formula adopted by the Commission correct, and likewise we think the position of plaintiffs that the Commission should have determined a reasonable freight rate on ice as on commodities, offered for and intended to be carried in transportation, incorrect, and we find nothing in the opinion of the Supeme Court in Northern Pacific Ry. v. North Dakota, 236 U. S. 585, 35 S. Ct. 429, 59 L. Ed. 735, L. R. A. 1917F, 1148, Ann. Cas. 1916A, 1, to the contrary. That was a case in which only a line-haul

rate was involved. The state statute which the Supreme Court condemned attempted to "fix a rate for the transportation of a commodity under which, taking the results of the business to which the rate is applied, the carrier is compelled to transport the commodity for less than cost." The act had been upheld by the state court upon the ground that the rate was compensatory because it produced more revenue than was necessary to pay the actual expenses occasioned by the transportation of the commodity, though insufficient to reimburse the railroad proportionately for its fixed charges applicable to its entire business. To this the Supreme Court said: "We entertain no doubt that, in determining the cost of the transportation of a particular commodity, all the outlays which pertain to it must be considered. We find no basis for distinguishing in this respect between so-called 'out-of-pocket costs,' or 'actual' expenses, and other outlays which are none the less actually made because they are applicable to all traffic, instead of being exclusively incurred in the traffic in question." The distinction we are endeavoring to point out between this case and that from which the above quotation is made is that here the haulage of ice in the bunkers of a refrigerator car, for the advantage of the shipper in the preservation of the lading, is not itself traffic, nor is the ice itself a commodity as was the lignite in the North Dakota Case, though of course it is a transportation service for which full compensation should be provided, but as an "auxiliary" and not on a rate basis applicable to the lading.

For these reasons the interlocutory injunction must be and is denied.