## UNITED HAY CO. v. ST. LOUIS, B. & M. RY. CO.
### No. 9993.

Court of Civil Appeals of Texas. Galveston.
July 18, 1934.

Franklin & Blankenbecker and E. A. Kelly, all of Houston, for appellant.

Williams, Lee, Sears & Kennerly, of Houston, for appellee.

PLEASANTS, Chief Justice.

This is a suit by appellee against appellant for freight charges alleged to be due by appellant on shipments by appellant from the stations of Liverpool and Danbury on appellee's railway in the state of Texas to appellant's consignee at Fort Benning in the state of Georgia.

The following sufficient statement of the nature and result of the suit is copied from appellant's brief:

"Plaintiff's amended petition upon which the case was tried alleged, in substance, that it was a common carrier of freight and passengers for hire; that during the months of June, July, August, September and October, 1927, defendant, as consignor, delivered to plaintiff fifty-five carloads of prairie hay at the stations of Liverpool and Danbury, Texas consigned to the Quartermaster for the United States Government at Fort Benning, Georgia; that each of said cars was transported by plaintiff and its connecting carriers from

the point of origin to the point of destination, and there delivered to the named consignee; that on each of the shipments defendant was charged a rate of 65 cents per hundred-weight, plus a $13.13 per car switching charge; that with the exception of one car (BM 2931) all of the cars moved from Danbury or Liverpool, Texas, to Houston, Texas, where, after being accorded storage in transit privileges, the shipments were finally transported to destination; that the rate of 65 cents per hundred-weight was collected by the carriers and the switching charge of $13.13 per car was paid; that the rate as so assessed and collected was incorrect, and that the correct rate established and published by plaintiff and its connecting carriers, and on file with the Interstate Commerce Commission was as follows: [Here follows a statement of the published rate on file with the Interstate Commerce Commission on the respective dates of each of the shipments.]

"Plaintiff further alleged that the correct charge on each shipment should be computed by applying the correct rate, as alleged, to the weight of the respective cars, and after deducting the charges previously paid, the balance thus found and alleged to be due and unpaid, and was set out for each car, amounting to a total of $919.26, alleged to be owing to plaintiff by defendant.

"Defendant, United Hay Company, answered by a general demurrer and general denial.

"Trial was before the court without a jury, and on December 31, 1932, judgment was entered allowing plaintiff recovery against defendant in the sum of $919.26, together with interest thereon from December 23, 1929, at the rate of 6% per annum."

■ By its first proposition appellant assails the judgment on the ground that the allegations of the petition do not show that appellee was a railway company engaged in the transportation of freight and passengers by railroad, "or that it contracted to transport or did transport the shipments here involved by railroad," and therefore does not show that it was authorized to publish and file rates with the Interstate Commerce Commission, and to maintain this suit and recover any change for transporting appellant's hay in addition to that for which it contracted to perform such service.

The allegations of the petition are amply sufficient to meet this objection of appellant. These allegations show that appellee was a railroad company and that the shipment involved in this suit moved under uniform bills of lading, all of which are made a part of the petition, that these bills of lading are such as are prescribed by the Interstate Commerce Commission for shipments from an inland point in Texas to an inland point in Georgia, and that plaintiff as initial carrier is suing to collect freight charges due under rates prescribed by the Interstate Commerce Commission.

Defendant presented only a general demurrer to the petition, and, giving these allegations their reasonable intendment, it cannot be held that they are insufficient in any of the particulars pointed out by appellant.

■ Appellant's second proposition presents the complaint that the evidence fails to show that appellee, in transporting the shipments involved in this suit, "did so by railroad, or was engaged in a business whose rates or charges were subject under the law to regulation by the Interstate Commerce Commission," and that therefore the trial court erred in giving appellee judgment for the difference between the charges for which it had agreed to transport and deliver the shipments, and which it had collected from appellant, and the amount which would be due under the rates set out in the "Railroad Tariff on file with the Interstate Commerce Commission."

This contention cannot be sustained. The record shows this agreement of the parties was presented to the court when the trial upon the facts began:

"1. That the shipments of hay enumerated in Plaintiff's First Amended Original Petition were delivered to the plaintiff as the initial carrier, and were moved by the plaintiff and its connecting carriers in interstate commerce and delivered to the consignee named in the bills of lading at Fort Benning, Georgia.

"2. That the correct weights of said shipments are shown in the itemized statement of said shipments on pages 19 and 20 of Plaintiff's First Amended Original Petition, shown in Column 6 of this itemized statement of the shipments involved.

"3. That the bills of lading under which the shipments moved were made out as alleged, and executed on behalf of the defendant, United Hay Company, as the shipper or consignor, and the plaintiff as the initial carrier in the movement."

All of the evidence shows that these shipments moved from the stations on the railway line of appellee in Texas to Houston under the bills of lading set out in the petition, and were transported from Houston to the point of destination by appellee's connecting

carriers, and that each of the shipments were in carload lots. The bills of lading for these carload lot shipments clearly indicate that the connecting carriers therein mentioned were railroad carriers, and there is no evidence indicating otherwise.

The trial court upon the agreement before set out, and all of the evidence before it found that "the plaintiff and its connecting carriers transported said carloads of hay * * * from Liverpool and Danbury, Texas, to Fort Benning, Georgia, with due dispatch and delivered same in good condition"; that the shipments were all made under the tariff rates certified by the Secretary of the Interstate · Commerce Commission, and which "were admittedly promulgated, established, and filed by appellee as required by the provisions of the Interstate Commerce Act."

■ No exception was made by appellant to these fact findings. It seems clear to us that upon this record it cannot be held that the trial court erred in holding the appellant liable to appellee, as the initial carrier, for the full amount of the difference between the published tariff rates on file with the Interstate Commerce Commission and the amount paid appellee by the appellant.

■ By its third, fourth, and fifth propositions appellant presents that, since plaintiff admits in · its petition that the switching charges of $13.13 per car were paid, appellant is entitled to have said amount credited on the charge for transportation paid by it to appellee under its contract for such service in transporting the several shipments from the points of origin in Texas to their destination in Georgia, and the allowance of such credit would leave only a balance of $197.-09 due appellee, which amount is below the jurisdiction of the court below, and that court should have dismissed the suit for want of jurisdiction.

It is a sufficient answer to these propositions to say that the switching charges alleged in the petition were not involved in this suit. Such charges are separate from the freight rate charges for transportation of shipments under the provisions of the Interstate Commerce Act (section 6 [49 USCA § 6]). This act provides that: "Every common carrier subject to the provisions of this chapter shall file with the commission created by this chapter and print and keep open to public inspection schedules. * * * The schedules printed as aforesaid by any such common carrier shall plainly state the places between which property and passengers will be carried, and shall contain the classification of freight in force, and shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise change, affect, or determine any part or the aggregate of such aforesaid rates, fares, and charges, or the value of the service rendered to the passenger, shipper, or consignee."

■■ By no reasonable construction of the act can switching charges that may or may not become necessary in carrying out the contract of transportation be regarded as included in the tariff rates which the carrier is required to publish and file with the Interstate Commerce Commission. The rates for carrying the freight from its origin to its point of destination and other charges, such as switching charges, storage charges, icing charges, "and all other charges which the commission may require," must be separately stated in the published tariffs filed with the commission. It is manifest from these requirements of the act that the charges mentioned in addition to the freight rates only become due when the services for which they are made are performed by the carrier, and it is equally manifest from this record that these switching charges were not paid in advance, and there were neither pleadings nor evidence showing by whom they were paid, or that, if paid, the services for which they were charged were not performed by appellee's connecting carriers. Appellee's allegations that these charges were paid were wholly unnecessary, as its suit is only for the recovery of the difference between freight rates for which it contracted to transport the shipments and rates stated in its published tariff filed with the commission. This unnecessary allegation of the petition cannot relieve appellant of the necessary pleading and proof to establish, against appellee's claim for unpaid freight rates, any offset or counterclaim growing out of the payment of switching charges. The right of the initial carrier to sue and recover the amount of these freight undercharges has never been denied by any court so far as we are informed. The question has been directly decided in favor of appellee by two cases cited in its brief: St. Louis Southwestern Railroad Company v. Gramling, 97 Ark. 353, 133 S. W. 1129, 1130, and Williamson-Inman Co. v. Nashville, C. & St. Louis Ry. et al., 44 Ga. App. 129, 160 S. E. 687.

In the case first cited the appellant contended that the delivery carrier was a necessary party to the suit. In discussing and deciding the question, the court says: "Under

the allegations of the complaint in this case, we think that the plaintiff was the real party in interest. The plaintiff had as a common carrier entered into a contract with the defendant, whereby it had agreed to transport defendant's property from Paragould to the point of destination in Illinois, and, although the point of destination was beyond the terminus of its own line, it had the right to accept and make a binding contract to carry goods to that point. To carry out that contract, it employed connecting carriers to assist it in making the transportation. Such subsidiary carriers became under such circumstances the agents of the contracting carrier. St. L. S. W. R. Co. v. Wallace, 90 Ark. 138, 118 S. W. 412, 22 L. R. A. (N. S.) 379. The contracting carrier was still the principal who was entitled to receive the charges for the transportation."

The second cited case disposes of this question as follows: "Where goods are accepted in an interstate shipment by a carrier on a through bill of lading to a point of destination upon the line of another carrier, the carrier issuing the bill of lading thereby contracts with the shipper to transport the goods to the point of destination, and the connecting carrier, after receiving the goods from the initial carrier for transportation to the point of destination, is the agent of the initial carrier for the purpose of completing the performance of the contract. Galveston, etc., Railway Co. v. Wallace, 223 U. S. 481, 32 S. Ct. 205, 56 L. Ed. 516; Missouri, etc., Railway Co. v. Ward, 244 U. S. 383, 37 S. Ct. 617, 61 L. Ed. 1213; Central of Georgia Railway Co. v. Council, 163 Ga. 494, 136 S. E. 418, 61 A. L. R. 1304."

As before said, we know of no decision which decides this question differently.

■ The appellant contends in its brief that the record in this case fails to show that the shipments were made under a through bill of lading, and for that reason the decisions in the cited cases are not in point.

We cannot agree with this contention. Appellant admits that it agreed and contracted with the appellee for through transportation of each of the shipments and paid it the freight charges demanded therefor. These shipments were made under bills of lading prescribed by the Interstate Commerce Commission for shipments from a point in one state to a point of destination in another state. There was no evidence to the contrary. We cannot see how it can be held on this state of the evidence that these shipments were not made under through bills of lading, or were not such shipments as would make appellee's connecting carriers its agents in performing its contract to transport these shipments from Liverpool and Danbury in this state to its consignee at Fort Benning in the state of Georgia. We think the facts of this case bring it clearly under the rule announced in the cited cases.

The judgment of the trial court must be affirmed, and it has been so ordered.

Affirmed.