## TEX–O–KAN FLOUR MILLS CO. v. TEXAS & P. RY. CO.

No. 12762.

United States Court of Appeals Fifth Circuit.

Dec. 6, 1949.

Rehearing Denied Jan. 3, 1950.

Ralph W. Currie, Dallas, Tex., Frank A. Leffingwell, Dallas, Tex., for appellant.

Orrin Miller, Dallas, Tex., for appellee.

Before HOLMES, McCORD, and WALLER, Circuit Judges.

McCORD, Circuit Judge.

The Texas and Pacific Railway Company brought this suit against the Tex-O-Kan Flour Mills Company, doing business as Perry Burrus Elevators, to recover the sum of $1,263.63, alleged to be due as an extra service charge over and above the regular line haul charge on a shipment of seventy-one carloads of milo maize, shipped by appellant over its lines from various points near Corpus Christi to Galveston, by way of Dallas, Texas. The suit as originally filed sought recovery for extra service charges on an additional forty-two carloads of maize, but it was conclusively shown that the statute of limitations had run as against such shipments and claim thereon was eliminated, leaving only the dispute as to the seventy-one cars.

The question presented is solely one of interpretation of the applicable tariff regulations, and decision here must turn upon

the proper construction to be given Items 105-A and 980-E of Southwestern Lines Tariff 61-D.

 It has long been the law that where carriers charge a rate for a shipment less than the tariffs as approved by the Interstate Commerce Commission they may be penalized therefor, and where a less rate has been charged and collected it becomes the duty of the carrier to call upon the shipper to pay the promulgated and approved tariff rate. Here we have such a suit. The railroad carrier charged and exacted from this shipper an amount which it considered in accordance with the applicable tariff regulations. Upon complaint of the shipper it later refunded the amount of an alleged overcharge. Thereafter it determined that its rebate to the shipper had reduced the freight charge exacted below the amount required by the tariff regulations, and it thereupon called upon the shipper to return the amount which it had previously refunded. The shipper refused to return this amount, the sum sought in this suit, on the theory that it had already paid in full the applicable tariff rate for its shipment, as provided in Item 105-A: "Where the rate-making distance from or to Houston, Texas, is 150 miles or more, the rates from or to Houston, Galveston and Texas City, Texas, when applied on export * * * traffic, will be determined by using the distance * * * to Houston, Texas, plus 15 miles."

The carrier contends that charges on the shipment in question may not be computed solely on the basis of the above regulation, but that extra service charges on such shipment are recoverable under Item 980-E of the tariff regulations, and that this latter section comes into play where, as here, the shipment was not made from the initial point of origin direct to its intended final destination, but was routed by way of an intermediate transit point for storage, and later reloaded and shipped to its final destination. The important and controlling part of Item 980-E reads:

"When the combined short line distance from initial point of origin to final destination via transit point (or transit points when more than one transit privilege is taken) exceeds 350 miles, the through rate protected shall be that application from such combined short line distance and extra service shall be determined as follows: * * *

"Ascertain the mileage via the shortest possible route wholly within Texas from the original point of shipment direct to final destination, and substract same, but not less than 350 miles, from the mileage via the shortest possible route, wholly within Texas, from the original point of shipment to final destination through the transit point or through each successive transit point when more than one transit privilege is taken. The difference thus ascertained in excess of 300 miles will represent the extra service for which an additional charge shall be made * * *".

It is without dispute that the additional service charge on the shipment in question, if authorized by the above regulation, was properly assessed. The shipper merely denies that any extra service charge is due, on the theory that the additional charge provided for in Item 980-E is merely a part of the authorized through freight rate, and that this section must be construed together with Item 105-A in such manner as to eliminate the extra service charge altogether.

The case was tried to the court without a jury, and judgment was rendered for the railroad carrier for the amount sought, being $1,263.63.

 We are of opinion the trial court correctly held that Items 980-E and 105-A are separate, distinct, and unambiguous, and that the extra and additional service charges sought are clearly recoverable under Item 980-E of the tariff regulations. Supplement No. 33, Southwestern Lines Tariff 61-D, Items 980-E and 105-A; Burrus Mill & Elevator Co. v. Chicago, R. I. & P. R. Co., 10 Cir., 131 F.2d 532; Western Grain Co. v. St. Louis-San Francisco Ry. Co., 5 Cir., 56 F.2d 160, 161; Atlantic Coast Line Ry. Co. v. U. S., D.C., 33 F.2d 130; Hanna Furnace Corp. v. U. S., D.C., 53 F.Supp. 341, affirmed 323 U.S. 667, 65 S.Ct. 41, 89 L.Ed. 543; United Hay Co. v. St. Louis, B. & M. Ry. Co., Tex.Civ.App., 74 S.W.2d 766.

In each of the carload shipments here involved the point of final destination was Galveston, Texas, and the provisions of Item 980-E clearly reveal that the extra service charge is to be ascertained by measuring the mileage distance from the point of origin to the point of final destination. This "extra service charge" is entirely separate and distinct from the regular line haul "rate", as set forth in Item 105-A, and allows a shipper certain privileges. Moreover, it becomes patent that no ambiguity exists in these two sections when we come to determine the reason for this extra service charge. Item 980-E allows a shipper to ship his grain to a storage warehouse, unload and store the grain, and later reship it to its final destination. In so doing, the shipper is allowed certain free mileage. This special privilege is allowed for the reason that at certain times of the year grain storage space may not be available, and if it is not to be found at the intended final destination or the export situs is not then known, the shipper is granted this special transit privilege in order to preserve the grain. Here, the shipper has availed itself of the advantages of the transit privilege afforded under Item 980-E. Evidently no storage space was to be found in Galveston for the grain in question. The only place where the shipper elected to store the grain until it could be exported was at Dallas, Texas. Accordingly, it shipped the various carloads of maize to Dallas where they were unloaded and stored until they could be shipped to Galveston for export. After a period of approximately three months the grain was again reloaded and shipped to Galveston, its original point of final destination. When it arrived, the carrier was justified in charging the shipper with the amount here in dispute, as an "extra service charge" under Item 980-E of the tariff regulations. Burrus Mill & Elevator Co. v. Chicago, R. I. & P. R. Co., 10 Cir., 131 F.2d 532; Western Grain Co. v. St. Louis-San Francisco Ry. Co., 5 Cir., 56 F.2d 160, 161; Cf. U. S. v. American Sheet & Tin Plate Co., 301 U.S. 402, 408, 57 S.Ct. 804, 81 L.Ed. 1186; Great Northern Ry. Co. v. Delmar Co., 283 U.S. 686, 690, 51 S.Ct. 579,

75 L.Ed. 1349; Inland Steel Co. v. U. S., D.C., 23 F.Supp. 291, affirmed 306 U.S. 153, 59 S.Ct. 415, 83 L.Ed. 557.

It follows that the judgment of the district court was correct, and the same is accordingly

Affirmed.